NELSON F. SHELTON, APPELLANT, v. CLAYTON TIFFIN AND LILBURN P. PERRY.

Where an individual has resided in a State for a considerable time, being engaged in the prosecution of business, he may well be presumed to be a citizen of such State unless the contrary appear. And this principle is strengthened when the individual lives on a plantation and cultivates it with a large force, claiming and improving the property as his own.

On a change of domicile from one State to another, citizenship may depend upon the intention of the individual. But this intention may be shown more satisfactorily by acts than declarations. An exercise of the right of suffrage is conclusive upon the subject; but acquiring a right of suffrage, accompanied by acts which show a permanent location, unexplained, may be sufficient.

The facts, that the party and his wife were residents of Louisiana for more than two years before the commencement of the suit; that he was absent only once, on a visit to a watering-place; that he resided the greater part of the time on a plantation which he claimed as his own; that he constructed upon it a more secure and comfortable dwelling-house; that he observed to a witness that he considered himself a resident, — are sufficient to justify the Circuit Court of Louisiana in exercising jurisdiction in a suit brought against that party by a citizen of Missouri.

Where fraud is alleged in a bill, and relief is prayed against a judgment and a judicial sale of property, a demurrer to the bill, that relief can be had at law, is not sustainable.

Where a citizen of Virginia sued, in the Circuit Court of Louisiana, two persons jointly, one of whom was a citizen of Louisiana and the other of Missouri, and an attorney appeared for both defendants, the citizen of Missouri is at liberty to

show that the appearance for him was unauthorized.  If he shows this, he is not bound by the proceedings of the court, whose judgment, as to him, is a nullity.

A judgment of a State court, that the debt had been extinguished, given in an action which was not brought for the recovery of the debt, and which action, moreover, had been discontinued by the plaintiff, cannot be set up in bar of proceedings in the Circuit Court for the recovery of the debt, which proceedings had been commenced when the judgment of the State court was given.

Where a worthless promissory note is imposed upon the vendor as part of the cash payment, it would seem that, if any fraud has been practised upon the vendor by the vendee, the amount of the note still remains an equitable lien upon the land.

THIS was an appeal from the Circuit Court of the United States for East Louisiana, sitting as a court of equity.

On the 1st of August, 1837, Clayton Tiffin and Lilburn P. Perry received a deed for a tract of land on the western bank of the Mississippi River, about five miles above the town of Vicksburg, and containing six hundred and forty-four acres.

On the 10th of April, 1838, Tiffin and Perry sold the same land, together with a large number of negroes, to Samuel Anderson, for the sum of seventy-five thousand dollars.  The sale was stated to be for cash.  But in fact the payment was to be made in this way : —

| Funds supposed to be as good as cash, | . | . | $ 35,000 |
| Notes secured by mortgage, | . | . | 40,000 |
| | | | $ 75,000 |

John M. Perry, the father of Lilburn P. Perry, and father-in-law of Tiffin, became the agent to receive these funds.  The $ 35,000 was again divided into two classes, viz., a debt of $ 13,000, which was due to Anderson by Lilburn P. Perry and John M. Perry, and which debt became thus extinguished, and a note for $ 18,282.65, given by Austin, Ragan, and Bohannon, payable to Anderson on the 1st April, 1839.

The sum of $ 35,000 being thus arranged, the balance of $ 40,000 was not provided for until some time afterwards, viz. on the 1st of March, 1839, when Anderson gave the following notes : —

$ 13,333$\frac{00}{100}$.  On or before the first day of January, 1842, we promise to pay Lilbourne P. Perry the just and full sum of thirteen thousand three hundred and thirty-three dollars, value received, for land and negroes purchased of Clayton Tiffin and Lilbourne P. Perry ; for the true payment of which we bind ourselves, our heirs, &c., firmly by these presents.  Given under our hands and seals, this the first of March, 1839.

SAMUEL ANDERSON,          [SEAL.]

Ne varietur, July 9th, 1839.

RICHARD CHS. DOWNES,   [SEAL.]<br>
J. judge parish Madison, Louisiana.

Shelton *v.* Tiffin et al.

(Indorsed.)

For value received, I assign the within note to Clayton Tiffin, October 22d, 1839.

L. P. PERRY,

For his agent J. M. PERRY.

216.    Filed 23d Nov., 1839.

JOHN T. MASON, *Clerk.*

$13,333$\frac{00}{100}$. On or before the first of January, 1843, we promise to pay Lilbourne P. Perry the just and full sum of thirteen thousand three hundred and thirty-three dollars, value received, for land and negroes purchased of Clayton Tiffin and Lilbourne P. Perry ; for the true payment of which we bind ourselves, our heirs, &c., firmly by these presents.   Given under our hands and seals, this the first day of March, 1839.

(Signed,)         ⸲SAMUEL ANDERSON,         [SEAL.]

Ne varietur, July 9th, 1839.

RICHARD CHS. DOWNES, [SEAL.]
*J. judge parish Madison, Louisiana.*

(Indorsed) 216.    Filed Nov., 1839.

JOHN T. MASON, *Clerk.*

$13,333$\frac{00}{00}$. On or before the first of January, 1844, we promise to pay Lilbourne P. Perry the just and full sum of thirteen thousand three hundred and thirty-three dollars, value received, for land and slaves purchased of Clayton Tiffin and Lilbourne P. Perry ; for the true payment of which we bind ourselves, our heirs, &c., firmly by these presents.   Given under our hands and seals, this the first day of March, 1839.

(Signed,)         SAMUEL ANDERSON,         [SEAL.]

Ne varietur, July 9th, 1839.

RICHARD CHS. DOWNES, [SEAL.]
*J. judge of parish Madison, Louisiana.*

(Indorsed) 216.    Filed 28 Nov., 1839.

JOHN T. MASON, *Clerk.*

On the 9th of July, 1839, the remaining part of the agreement was carried into effect, by Anderson's executing a mortgage to Lilburn P. Perry, and in favor of whomsoever may become the legal holder and owner of the above notes, of the property, land, and slaves, which had been conveyed to Anderson by the deed from Tiffin and Perry.

On the same 9th of July, Anderson executed another mortgage, reciting that he was justly indebted to Nelson F. Shelton, of Goochland county, in the State of Virginia, in the sum of $45,550, and mortgaging the same property to secure it, —

" it being understood that this mortgage is posterior to that granted by the said Samuel Anderson in favor of Lilburn P. Perry on this day." This sum of $45,550 was divided into two notes, payable on the 1st of January, 1845, and 1st of January, 1846. Whilst upon the subject of this last mortgage, it may be as well to say that another was substituted for it, with the consent of all parties, on the 17th of March, 1840, in which Robert Anderson, of Virginia, was also included, as a creditor to the amount of $3,000. This, like the other, referred to the prior mortgage given to Perry.

It is proper now to go back a few months in the order of time.

In January, 1839, Hillery Mosely and William W. Bouldin, citizens of Virginia, filed a petition in the Circuit Court of the United States against John M. Perry and Lilburn P. Perry, alleging that the Perrys were indebted to the petitioners in the sum of $7,560, upon a promissory note. As the proceedings upon this suit, as far as the appearance of Lilburn P. Perry was concerned, were drawn into question, it is better to go through with this branch of the case entirely before recurring to any other part of it. On the 12th of January, an order of court was directed to Lilburn P. Perry, commanding him to file his answer within ten days, to which the marshal made the following return : —

" Defendant, L. P. Perry, could not be found, after diligent search and inquiry. Returned Feb. 23, 1839.

"J. P. WALDEN, *Deputy Marshal.*"

A writ of arrest was then issued, directing the marshal to seize the bodies of John M. Perry and Lilburn P. Perry, and confine them till they should give security not to leave the State without permission of the court, to which the marshal made the following return : —

### Marshal's Return.

Received 12th January, 1839 ; and, on the 18th same month, arrested and took defendant, John M. Perry, into my custody, from whence he was released by giving bond, with Z. H. Rawlings, Charles Johnson, and H. Lewis, as sureties, in the parish of Madison, 450 miles from New Orleans, in the Eastern District of Louisiana ; which bail bond is herein returned ; and Lilbourne P. Perry could not be found, after diligent search and inquiry, and executing this writ in all other things as the law directs. Returned February 23d, 1839.

(Signed,) J. H. HOLLAND, *Marshal.*

After this, B. A. Crawford, calling himself "attorney for defendants," filed an answer for John M. Perry and Lilburn P. Perry, and the cause regularly proceeded to trial, Mr. Crawford attending to it in all its stages as attorney for both defendants. In June, 1839, it was tried, and the jury found a verdict for $7,560. In July, a *fi. fa.* was issued, the return to which was, "no property." In October, an *alias* was issued, to which the marshal made the following return, viz. : —

### Marshal's Return.

Received 23d day of October, 1839, and on the same day made demand of the amount of the within *fi. fa.*, at the residence of the within-named defendants, John M. Perry and Lilbourne P. Perry, which was refused. I seized, on the 23d day of November, 1839, a debt due by Samuel Anderson to the within-named Lilbourne P. Perry, for forty thousand dollars. There *was* three notes given by said Anderson to said Perry, and mortgage on fifty slaves and six hundred and forty acres of land, to receive the payment of said debt to satisfy this *fi. fa.*, and after advertising the said claim ten entire days from the last day of the notice of seizure, and having appraisers appointed according to law, who appraised said property to be worth twenty-eight thousand dollars, cash valuation, on the 10th day of December, 1839, and then, on the same day, offered the property for sale for cash, and repeatedly crying it, — there was no sale for want of a bid to the amount required by law, and then I advertised the same property, and sold the same on the 4th day of January, 1840, on a credit of twelve months, when Samuel Anderson became the purchaser thereof for the sum of five thousand dollars, he being the highest and last bidder, for which he gave his bond, with John B. Bemiss and Aaron Lilly as security ; which bond I received, and the said bond is herewith returned ; four hundred and thirty miles from New Orleans.

(Signed,)     M. MARIGNY, *U. S. Marshal.*
        By JOHN N. DONOHUE,
                *Deputy U. S. Marshal.*

In January, 1840, a *capias ad satisfaciendum* was issued against both the Perrys for the balance of the judgment after deducting the proceeds of the sale to Anderson, to which writ the marshal made the following return : —

### Marshal's Return.

Received Thursday, the 16th January, 1840, and after diligent search and inquiry, the within-named defendants, John M. Perry and Lilbourn P. Perry, could not be found in the

Eastern District of Louisiana, — distance five hundred miles from New Orleans.

(Signed,)　　　　　　M. Marigny, *U. S. Marshal.*
　　　　　　　By John N. Donohue,
　　　　　　　　　　*Deputy U. S. Marshal.*

The marshal soon afterwards executed the following conveyance to Anderson : —

State of Louisiana, *Parish of Madison :*

Whereas I, John N. Donohue, deputy United States marshal in and for the Eastern District of the State of Louisiana, by virtue of a writ of *fieri facias* issued from the Circuit Court of the United States for the Ninth Circuit in and for district and State aforesaid, at the suit of Mosely and Bouldin *v.* John M. Perry and Lilbourne P. Perry, I did seize a certain debt owing by Samuel Anderson to said Lilbourne P. Perry, as evidenced by three promissory notes, dated 1st of March, 1839, due in the years 1842, 1843, and 1844, each for the sum of thirteen thousand three hundred and thirty-three dollars, payable by said Samuel Anderson to the said Lilbourne P. Perry, which notes are " paraph*in* " on the 9th of July, 1839, together with the mortgage intended to secure said notes or debts, recorded in the office of the parish judge of the parish of Madison, in the parish and State aforesaid, in the record-book of conventional and legal mortgages, pages 27 and 28, where there are fifty slaves and six hundred forty acres of land mortgaged to secure the payment of said notes and mortgage, seized as the property of said Lilbourne P. Perry, and having exposed the same to public sale as aforesaid, on a credit of twelve months, when Samuel Anderson became the purchaser thereof at the price of five thousand dollars, for which he gave his bond with John B. Bemis and Aaron Lilly as his securities, payable in twelve months after the date thereof, all in due form of law, and which bond I hereby acknowledge to have received.

Now, therefore, know all men by these presents, that I, the said deputy as aforesaid, do, in consideration of the premises, and by virtue of the act in such cases made and provided, grant, bargain, sell, assign, and set over to the said Samuel Anderson, his heirs and assigns, all the right, title, and interest or demand, which the said Lilbourne P. Perry had, in and to the said debt, notes, and mortgage, as before described, on the twenty-third day of November, A. D. 1839, or at any time since, or to any part thereof; to hold the same to the said Samuel Anderson, his heirs and assigns for ever, hereby subrogating (as far as my act in the premises can) said Samuel to all the rights which the said Lilbourne P. Perry had or has, in,

under, and to the aforesaid mortgage ; and the said Samuel Anderson being present hereby accepts this conveyance, and hereby specially mortgages the above-described debt and mortgage to secure the final payment of the purchase-money, and all interest and costs that may accrue in the premises.

Done and passed in the State and parish aforesaid in presence of John B. Bemiss and Aaron Lilly, competent witnesses, who have signed with me, said deputy U. S. Marshal, and Samuel Anderson, this 4th day of January, 1840 and said Samuel Anderson before signing.

(Signed,)  JOHN N. DONOHUE.

Having traced this suit to its termination, we must turn our attention to another.

On the 23d of November, 1839, Lilburn P. Perry, by Martin, Richardson, and Stacy, his attorneys, filed a petition in the District Court in and for the parish of Madison, setting forth Anderson's indebtedness to him upon the mortgage and notes above described for $ 40,000, and stating his belief that Anderson was about to leave the State of Louisiana, and that he would, unless restrained by the conservative process of the court, remove his property out of the State before the debt or any part of it became payable. He therefore prayed for a writ of attachment to be levied upon the plantation, crops, and negroes. At the time of filing this petition, Perry filed also the original promissory notes, being three in number, for $ 13,333 each, payable 1st of January, 1842, '43, '44. With the petition was filed also the affidavit of John M. Perry, signing himself " agent for L. P. Perry," who was stated to be absent from the State of Louisiana.

The attachment was ordered and issued ; but on the 27th of November, John M. Perry filed in court the following, viz. : —

*Instructions.*

LILBOURNE P. PERRY  
   v.  } 9th District Court. — An attachment.  
SAMUEL ANDERSON.

I, John M. Perry, acting as agent for Lilbourne P. Perry, plaintiff in above-entitled suit, hereby direct Thomas B. Scott, of the parish of Madison, to return the writ of attachment now in his hands, in the suit of Lilbourne P. Perry v. Samuel Anderson, No. 216, on the docket of said District Court for the parish of Madison, to the clerk's office of said court, without making any seizure or service on said writ of attachment ; and I furthermore hereby direct said sheriff and clerk, that all pro-

ceedings had, or to be had, under said attachment, be dismissed and discontinued.

(Signed,) JOHN M. PERRY,

*Agent for L. P. Perry, Clayton Tiffin, J. H. Martin, Geo. W. Grove.*

Received on the 27th November, A. D. 1839, and served on the 28th of same month and year, by handing a certified copy of this writ of attachment to the defendant, Samuel Anderson, in person, at the court-house in Richmond, and then was instruct[ed by] the plaintiff in this case not to levy the attachment, but to return it to the clerk's office, as will be seen by reference to the within order from him. Service $2.

(Signed,) T. B. Scott, *Sheriff.*

The cause remained in this condition for nearly a year, when Anderson filed the following answer, on the 18th of November, 1840 : —

LILBOURNE P. PERRY ⎫
      *v.* ⎬
SAMUEL ANDERSON. ⎭

The defendant came into court, and for answer to plaintiff's petition in this suit filed, denies all and singular the allegations therein contained and set forth. And for further answer thereto he says, that the notes mentioned and appended to plaintiff's petition were executed and delivered to the petitioner, as set forth therein ; also, that the mortgage set forth was executed as set forth, and for the purposes as shown in said mortgage.

This defendant for further [answer] sets forth, that on the 23d day of November, A. D. 1839, John N. Donohue, deputy United States marshal, in virtue of a writ of *fieri facias*, then in his hands, which issued from the Circuit Court of the United States for the Ninth Circuit, in the Eastern District of Louisiana, at the suit of Mosely and Bouldin against John M. Perry and Lilbourne P. Perry, seized upon the several promissory notes mentioned in, and appended to, plaintiff's petition, and the mortgage securing the same ; and afterwards, to wit, on the 4th day of January, A. D. 1840, proceeded to sell the said notes and mortgage, in satisfaction of the said *fieri facias* of Mosely and Bouldin *v.* John M. Perry and Lilbourne P. Perry, when this defendant became the purchaser of said notes and mortgage, at the last and highest bid. All of which will more fully appear by the annexed copy of said marshal's sale, which is herewith filed, and made part of this answer.

This defendant further shows, that, at the time of the seizure of the said notes and mortgage, they were due and payable

to Lilbourne P. Perry only, and were his property at the time of said seizure by the deputy marshal as aforesaid. And defendant further shows, that the indorsement made on the back of one of the notes due on the 1st of January, 1842, was not made at the date thereof, to wit, on the 22d of October, 1839, but was made after the said seizure so made by the marshal as aforesaid; and said assignment was only dated for the purpose of evading said seizure. All of which this defendant will be prepared to show on the trial of this suit.

This defendant therefore shows and alleges, that by virtue of the purchase made by him at the marshal's aforesaid, the said debt, mentioned and shown by said note sued on, and the mortgage securing, have been discharged and extinguished by confusion, and by this defendant's becoming the owner of the said debt and mortgage.

Defendant therefore prays that plaintiff's demand be rejected, and that the notes sued on and mortgage may be decreed to be discharged and extinguished by the confusion created by said sale, as before set forth.

(Signed,)          JOHN B. BEMISS, *Att'y for def'ts.*

On the 18th of May, 1841, the counsel of Perry made the following motion : —

L. P. PERRY  
    *v.*  
SAMUEL ANDERSON.

Plaintiff by his undersigned counsel moves that this suit be dismissed at his costs.

MARTIN, RICHARDSON, & STACY, *Attorneys.*

And on the 20th of May, 1841, the following was entered on the minutes of the court.

LILBOURN P. PERRY  
    *v.*  
SAMUEL ANDERSON.

Motion filed by plaintiff's counsel to dismiss this suit at plaintiff's costs.

Ordered, that the motion to dismiss be sustained, and that this suit be dismissed at plaintiff's cost, by consent of the parties. It is also ordered, that the three notes on file in said suit be not withdrawn therefrom by either party, unless upon an order of this court, previously and contradictorily rendered with the other party, after due notice to him ; and defendant has leave to withdraw documents marked A, by leaving a certified copy with the clerk.

*Motion.*

LILBOURN P. PERRY ⎱
　　　*v.*　　　 ⎰ 216.
SAMUEL ANDERSON. ⎰

The defendant herein moves this honorable court for a rule on plaintiff, to show cause why the notes sued on in above-entitled suit should not be given up to him upon his leaving a certified copy of said notes, they being the property of said defendant, &c. 　　　　　　　　　BEMISS & PIERCE,
　　　　　　　　　　　　　*Att'ys for defendants.*

*Judgment.*

By reason of the law and the evidence in this case, and by reason of a motion of plaintiff's counsel thereto, it is ordered, adjudged, and decreed, that judgment be rendered as if nonsuit in this case, and that the notes herein filed be not withdrawn until leave [be] obtained ; and that the plaintiffs pay the costs of suit to be taxed.  Read and signed in open court, this 3d day of June, A. D. 1841.

　　　　　　　　B. G. TENNY, *Judge 9th Dist.*

The cause remained in this position for nearly a year, a bill having been filed in the mean time, viz. on the 21st April, 1842, in the Circuit Court of the United States, by Tiffin and Perry against Anderson and Shelton.  This bill (which is the present case) will receive particular notice after the history of the proceedings in the Parish Court shall have been finished.

On the 11th of May, 1842, the following motion was made in the Parish Court : —

Motion to withdraw notes filed, and it is ordered by the court, that L. P. Perry, the plaintiff in this suit, show cause on Thursday, the 19th instant, why the application should not be granted.

*Answer.*

LILBOURN P. PERRY ⎱
　　　*v.*　　　 ⎰ Ninth District Court, parish of Madison.
SAMUEL ANDERSON. ⎰

The plaintiff, Lilbourne P. Perry, for cause against the rule taken upon him by Samuel Anderson, why the notes sued on should not be withdrawn and delivered up to said Anderson, shows, that the plaintiff has taken a voluntary nonsuit in the above cause, after issue joined, which issue has never been either tried or decided ; but that plaintiff now stands on the record as the owner of said notes, and he denies that said Anderson can have an order of this court for the delivery to him of said notes until it shall have been decided in a suit, regularly brought for that purpose, that said Anderson is the owner of

said notes, which issue he denies can be tried upon the said defendant's rule to show cause ; wherefore, and for other reasons equally apparent, he prays that defendant may be discharged at his costs.

D. S. STACY, *Att'y for pl'ff.*

On the 19th of May, 1842, the court overruled the above exceptions, and ordered the trial of the rule to proceed; when a motion was made on the part of Perry for a continuance, and an affidavit of John M. Perry filed in support of the motion. The affidavit stated the absence of a material witness, viz. Crawford, the attorney in the suit of Mosely and Boulding against John M. Perry and Lilburn P. Perry, and that he expected to prove by him that he, Crawford, put in an answer by mistake for the said Lilburn P. Perry, and that he, said Crawford, never had any authority from the said Lilburn P. Perry, or from any duly authorized attorney or agent of said Lilburn P. Perry, to put in said answer, or to make any answer or plea of any description whatever, or in any manner whatever to represent said Lilburn P. Perry in said suit. John M. Perry also filed the following affidavit : —

"John M. Perry, agent and attorney in fact of the plaintiff in the above-entitled suit, makes oath, that he is the agent of Lilbourn P. Perry, the said plaintiff; that said Lilbourn P. Perry is absent at this time from the State of Louisiana, and he, said Lilbourn P. Perry, resides in the State of Missouri, and has resided in said State of Missouri for several years past; that Lilbourn P. Perry has not been within the vicinity of the State of Louisiana for nearly or quite two years past, and that ever since the said Lilbourn P. Perry left the State of Louisiana, which affiant believes was in the fall of the year. 1838, and became a resident in the State of Missouri, affiant has been, as he is now, the agent and attorney in fact of the said Lilbourn P. Perry.

"Affiant swears, that not until Wednesday, the 18th day of May, in the year 1842, was affiant apprised that any such motion as that now before the court, made on the part of Samuel Anderson, had been made, nor had affiant any knowledge that any such motion was intended to be made on the part of said Anderson, or any one claiming under him.

" Affiant swears further, that Bennet A. Crawford, who resides in the city of New Orleans, is a witness whose testimony is material for the substantiation of the claims of the said Lilbourn P. Perry on the trial of said motion; that the said Lilbourn P. Perry cannot go safely to trial without the evidence of said Crawford, and that he expects to prove by said Crawford

15*

such facts as will show the said Anderson has no title in and to said notes.

" Affiant swears, also, that since he was informed of the existence of said motion, he has not had time to procure the testimony of said Crawford, and that he cannot procure said testimony of said Crawford in time to go to trial at the present term of this court, but he, affiant, expects to procure said testimony of said Crawford so as to go to trial at the next term of this honorable court; and finally, that this affidavit is not taken for the purpose of delay, but only to obtain substantial justice.

" JOHN M. PERRY."

The court having ordered the trial of the rule to proceed, the counsel of Perry declined to make any further appearance, and took a bill of exceptions, which was signed by the judge.

Anderson then offered in evidence the proceedings consequent upon the judgment in the case of Mosely and Boulding against John M. Perry and Lilburn P. Perry, the execution, the sale to Anderson, and the deed to him by the marshal, all of which have been stated above.

On the 19th of May, 1842, the court rendered the following judgment : —

" On a rule to show cause. — By reason of the law and the evidence being in favor of the defendant, and against the plaintiff, Lilbourn P. Perry, and the defendant's answer to the plaintiff's petition, and the evidence being considered, and the defendant, Samuel Anderson, having proved to the satisfaction of the court, that he has, since the institution of this suit, become the true and legal owner of the three notes sued on, and the indebtedness set forth in plaintiff's petition having been extinguished by confusion, it is ordered, adjudged, and decreed, that the defendant, Samuel Anderson, have judgment in his favor, and against the plaintiff, Lilbourn P. Perry, and that said Samuel Anderson be decreed to be the true and legal owner of the said three notes, the same being extinguished by confusion, and that the same be adjudged and decreed to be delivered up to said defendant, Samuel Anderson, and that the said L. P. Perry pay the costs of this suit, to be taxed. Done and signed in open court, this          1842.

" THOS. CURRY,
*District Judge, Ninth Judicial District.*"

From this judgment an appeal was prayed and granted to the Supreme Court of the State of Louisiana.

On the 3d of December, 1842, Anderson received the original notes from the clerk of the court.

We must now turn our attention to another suit.

It has been already stated, that on the 17th of March, 1840, Samuel Anderson acknowledged himself indebted to Nelson F. Shelton, of Virginia, to the amount of $ 45,550, and to Robert Anderson, also of Virginia, to the amount of $ 9,000; and that he mortgaged all the property which he had purchased from Tiffin and Perry to secure those debts, making this last mortgage posterior to that to Tiffin and Perry.

On the 3d of April, 1841, Nelson F. Shelton and Robert Anderson filed a petition in the Ninth District Court for the State of Louisiana, holding sessions in and for the parish of Madison, setting forth the mortgage, and praying that the sheriff might be ordered to seize and sell, for cash, so much of the mortgaged property as would pay their respective debts.

On the 12th of April, 1841, the judge issued the order, as prayed.

On the 10th of July, 1841, the sheriff returned that he had offered the property at public auction, "and Nelson F. Shelton, sen'r, and Robert Anderson, the plaintiffs herein, being present, bid for said property the sum of thirty-six thousand dollars, which being the highest bid or offer made, and being over and above two thirds of the cash valuation of the same, the said property was adjudicated to Nelson F. Shelton, sen'r, and Robert Anderson, at and for the said sum of thirty-six thousand ($ 36,000) dollars, subject to all the privileges and mortgages encumbering the same; wherefore, in virtue of the premises herein set forth, and of the law in such case made and provided, and for and in consideration of the price above described, I, Thomas B. Scott, sheriff as aforesaid, do sell, transfer, and convey unto the said Nelson F. Shelton, sen'r, and Robert Anderson, in proportion to the claim of each plaintiff in said writ of seizure, all the right, title, and interest of the said defendant, Samuel Anderson, in and to the before described, and all the appurtenances thereunto belonging, unto them, the said Nelson F. Shelton, sen'r, and Robert Anderson, and their heirs or assigns for ever.

"In testimony whereof, I have hereunto set my hand, at the parish of Madison, State of Louisiana, on this the sixteenth day of June, eighteen hundred and forty-one, in the presence of Alexander T. Steele and Edmond Cavelier, competent witnesses, who have signed with me the said sheriff.

(Signed,)            THO. B. SCOTT,
*Sheriff of the Parish of Madison, Louisiana.*"

It is not necessary to insert in this statement two suits which are inserted in the record, which were carried on, one in the

Circuit Court of the United States by Tiffin, upon his own account, against Anderson, upon three promissory notes, amounting in the whole to $ 12,065, and the other in a court of Mississippi by Anderson, for the use of Clayton Tiffin, against Austin, Ragan, and Bohannon, upon the note for $ 18,282, which Anderson had considered a part of his cash payment, as above narrated. Both these suits ended in judgments which produced no fruits.

We come now to the suit in the Circuit Court, which was the basis of the present appeal.

On the 21st of April, 1842, Clayton Tiffin and Lilburn P. Perry filed a bill on the equity side of the Circuit Court of the United States. They state themselves to be residents of the city of St. Louis and citizens of the State of Missouri, and file the bill against Samuel Anderson, Robert Anderson, Nelson F. Shelton, Hillery Mosely, and William W. Bouldin. The bill recites the sale to Samuel Anderson, the deficiency in the cash payment, the execution of the notes and mortgage by Anderson, the suit against him by Lilburn P. Perry, the suit against Perry by Mosely and Bouldin, the judgment, the sale of the whole interest to Anderson for $ 5,000, the foreclosure of Shelton's mortgage with an intent to defraud, and then avers, that, at the institution of the suit by Mosely and Bouldin against Perry, the latter was not a citizen of Louisiana, but of Missouri; that he was never served with process, and never employed any one to appear for him; that the judgment was thereby wrongfully recovered, and is void; that admitting the validity of the judgment, yet the subsequent proceedings were irregular; that the land and slaves never were the sole property of Perry, and that Anderson knew it; that the first note was specially indorsed to Tiffin as a part of his share; that this was done before it was seized as being the property of Perry. The bill then prayed that the judgment of Mosely and Bouldin might be set aside, that their mortgage might be foreclosed, and for general relief, and for an injunction.

The defendants, Samuel Anderson and Nelson F. Shelton, demurred to the bill for want of equity, which being overruled, they severally pleaded to the jurisdiction of the court, that said Shelton, and all the other defendants except Samuel Anderson, were citizens of the State of Virginia. Upon these pleas, evidence was taken on both sides, and on that evidence the pleas were overruled.

The defendants who had pleaded and Robert Anderson then put in their answers to the bill. The grounds of defence set up and relied upon by the defendants were, —

1st. That it was part of their original contract of purchase

that the complainants would receive, in satisfaction of the cash payment, the debt due to Samuel Anderson by John M. and L. P. Perry, and the note on Austin, Ragan, and Bohannon; that complainants knew the drawers and the value of the note, and that, but for their agreement to receive these notes, he would not have given the price at which he purchased; and that, therefore, they have no right to claim of him any thing on account of their failure to collect said note of the drawers.

2d. That, before the execution of the three notes secured by the mortgage, Samuel Anderson and John M. Perry gave three notes, for about the aggregate amount of $ 12,000, to the said Clayton Tiffin, with the understanding and agreement, that thereafter, when the said mortgage notes were executed, one of them was to be given to him for the said three first-mentioned notes, which were then to be surrendered up. That this had not been done. On the contrary, the complainants retained all the three mortgage notes, and that said Clayton Tiffin had not only not surrendered the three other notes given to him, but had sued on them in the same United States Circuit Court, and had recovered judgments thereon, and that, therefore, the mortgage debt ought to be credited by the amount of those judgments.

3d. That Samuel Anderson had, in good faith, purchased and paid for the said three mortgage notes, amounting to $ 40,000, when seized and sold on the 4th of January, 1840, by the marshal, under execution from the same United States Circuit Court, on a judgment therein obtained by Mosely and Bouldin against the said Lilburn P. Perry and John M. Perry; that the said Lilburn P. Perry appeared to that suit by a licensed attorney-at-law; that all the proceedings in the suit, and in virtue of the execution, were regular and legal; and that the sale under said execution, and his purchase, had been decided to be valid by the District Court of the Ninth District of Louisiana (a State court), in a suit of Lilburn P. Perry against the said Samuel Anderson; and that thereby the said mortgage debt was "extinguished by confusion," as was adjudged by the said State court; and that, on the faith of the validity of said proceedings, the said defendants, Nelson F. Shelton and Robert Anderson, had instituted a suit, in April, 1841, in the said District Court for the Ninth District of the State of Louisiana, on a mortgage in their favor, given to them by the said Samuel Anderson (subsequent, however, to the mortgage given to the complainants), and on the 14th of June, 1841, by virtue of an order of seizure and sale in the said suit, caused the said mortgaged property (the same previously mortgaged to complainants) to be sold by the sheriff, and became themselves the

purchasers (at the price of $ 36,000), and took possession under their purchase. To prove all this, they refer to the record of said suit, and rely on these several purchases of Samuel Anderson, and of Nelson F. Shelton and Robert Anderson, as extinguishing or precluding the claim of the complainants.

The complainants filed a general replication.

With respect to the third ground of defence, the testimony of Mr. Crawford was taken, who, it will be recollected, was the attorney who appeared for Lilburn P. Perry in the suit against him by Mosely and Bouldin.

### Evidence of Mr. Crawford.

1st. Are you a counsel and attorney at law, practising as such at the bar of the State of Louisiana, and were you in the year 1839?

He answers, Yes.

2d. Did you appear in your aforesaid capacity in the defence of a suit instituted by Mosely and Bouldin, in        , 183  , against John M. Perry and Lilburn P. Perry, in the Circuit Court of the United States for the Eastern District of Louisiana?

To the 2d. He answers, Yes.

3d. Will you please state if you ever received any authority, either directly or indirectly, from Lilburn P. Perry, or from any one on his behalf, to appear and represent and defend his interest in said suit?

To the 3d. He answers, he has no recollection of having received any authority, either directly or indirectly, from Lilburn P. Perry, or from any one on his behalf, to appear and represent and defend his interest in said suit, other than what might be inferred in a letter from John M. Perry, informing him that he would see upon the records of the court of the United States a suit, commenced against him and others by H. Mosely and Bouldin, and his wish to employ him to defend it. In no other part of his letter is reference made to the name of Lilburn P. Perry.

4th. Were you, or not, employed by John M. Perry alone for his defence, without any direction or request to appear on behalf of Lilburn P. Perry; and was, or not, your appearance on behalf of the defendants in said suit an inadvertence on your part?

To the 4th. He answers, he was employed by J. M. Perry in said letters aforesaid, and without any directions or request to appear on behalf of Lilburn P. Perry, other [than] what may be inferred from the letters aforesaid. Deponent regards his appearance on behalf of any other person than John M. Perry, in said suit as an inadvertence on his part.

5th. Did you, or not, know, at the time of your said appearance, that the said Lilburn P. Perry had never been served with process of citation in said suit, and that, at the time of its institution, he was a citizen of Missouri, residing in the city of St. Louis?

To the 5th. Deponent did not know, at the time of his said appearance, that Lilburn P. Perry had never been served with process of citation, and only presumed that it has been done; and accordingly misled him, as far as it has been done in the answer of John M. Perry. Deponent did not know, of his own knowledge, that, at the time of the institution of the said suit, Lilburn P. Perry was a citizen of St. Louis, Missouri.

### Cross-Interrogatories.

1st. If you filed an answer and amended answer to the suit of Mosely and Bouldin against John M. Perry and Lilburn P. Perry, in the federal court, early in 1839, in the name of both defendants, did you never receive any instructions from Lilburn P. Perry to do so, or as to the suit? Did he never converse with you about the suit, either before or since? Did he never write to you in relation to it, either before or since?

To the first cross-interrogatory, he saith: In relation to the answers referred to in the said interrogatory, deponent has no recollection of having received any instructions from Lilburn P. Perry on the subject; nor of his having conversed with him about the suit before filing said answers; nor of his having conversed with him about the said suit until after the rendition of judgment against him; nor of his having ever written to him in relation to it, either before or since its institution.

2d. Was not John M. Perry his agent or attorney in fact? Did you not see in his hands authority to act for Lilburn P. Perry? Have you not reason to believe, and what reason, that he had authority to defend that suit?

To the 2d cross-interrogatory. Deponent does not know that John M. Perry was agent, or attorney in fact; deponent never saw in [his] hands any authority to act for Lilburn P. Perry; deponent had no reason to believe that John M. Perry had authority to defend the said suit for Lilburn P. Perry.

3d. Was not John M. Perry the father of Lilburn P. Perry? Was he not his agent generally in Louisiana? Did not Lilburn P. Perry at some time avow and ratify the act done by John M. Perry for him?

To the 3d cross-interrogatory. John M. Perry has been regarded as the father of Lilburn P. Perry; deponent has no knowledge of his being his agent generally in Louisiana; deponent has no knowledge that Lilburn P. Perry ever avowed or ratified the acts done by John M. Perry for him.

4th. Was there any defence for Lilburn P. Perry which John M. Perry did not make ? Are you not satisfied that the claim of Mosely and Bouldin against him was perfectly just ?

To the 4th cross-interrogatory. I know of no other defence for Lilburn P. Perry, than what is stated in my answers to the interrogatories of the plaintiff, and in my answers to the foregoing cross-interrogatories. I have no personal knowledge of the claim of Mosely and Bouldin, and have not heard or seen any thing to satisfy me that it is just.

5th. Do you know, or can you set forth, any other matter or thing which may be a benefit or advantage to the parties at issue in this cause, or either of them, or that may be material to the subject of this your examination, or the matters in question in this cause ? if yea, set forth the same fully and at large in your answer.

To the 5th. I do not know, nor can I set forth, any other matter or thing which may be of benefit or advantage to the parties at issue in this cause, or either of them, or that may be material to the subject of my examination, or the matters in question in the cause.

On the 27th of June, 1843, the Circuit Court pronounced the following decree.

TIFFIN AND PERRY     } Circuit Court, United States. — In
         v.         } Equity, June, 1843.
SAML. ANDERSON ET ALS. }

This cause came on to be heard at this term, and was argued by counsel ; and thereupon, upon consideration thereof, it was ordered, adjudged, and decreed, that the complainants are justly, legally, and equitably entitled to payment of the sum prayed for in their bill of complaint, as the unpaid consideration-money for the purchase of the plantation and slaves described in said bill, and purchased from the complainants by the respondent, Samuel Anderson ; that said sum has not been paid, satisfied, or extinguished, notwithstanding the allegations and matters of defence set forth in the answer of the respondents ; that the entire property mortgaged by the respondent, Samuel Anderson, to the complainant, Lilbourne P. Perry, is in law and equity subject to the payment of said sums ; that the lien and mortgage exist upon said property, in the possession of the respondents, Robert Anderson, and Nelson F. Shelton, the third possessors thereof, notwithstanding the matters of defence which they have severally set forth in their answer to the bill of complaint. And therefore, in order to carry into effect this decree, and secure to the complainants their legal and equitable rights, it is ordered, that the marshal of this

court do forthwith take into his possession the property described in the mortgage from Samuel Anderson to Lilbourne P. Perry, and restore -the same to the possession of the complainants, or their legal representative ; and if, within sixty days thereafter, the · said respondent shall well and truly pay, or cause to be paid, the complainants, or their legal representative, the sum of forty thousand dollars, with interest thereon from the first day of January, 1842, until paid, the same being the unpaid consideration for the purchase of said property from the said complainants, then said property shall be relinquished to respondents.

And it is further ordered, that the complainants, upon being restored to the possession of said property, do give bond, in the sum of twenty thousand dollars, conditioned for the restoration of said property, and the proceeds thereof, from the time of their being placed in possession by the marshal, to the respondents, in case said respondents shall see cause to appeal from this decree to the Supreme Court of the United States, and the decree of this court be reversed upon said appeal.

It is further ordered, that the respondents pay the costs of this suit.

(Signed,)        THEO. H. McCALEB, *U. S. Judge.*

An appeal from this decree brought the case up to this court.

It was argued by *Mr. Jones*, for the appellant, Shelton, and *Mr. Crittenden*, for Tiffin and Perry ; but the length to which this case has already reached renders it impossible to give any other than a very brief sketch of their arguments.

*Mr. Jones*, for the appellant, objected to the jurisdiction of the court upon two grounds : —

1. Four of the five defendants are averred, in pleas and answers under oath, to have been citizens, not of Louisiana, but of Virginia, at the time of the institution of the suit ; and two of them, Mosely and Bouldin, being *admitted* not to have been citizens of Louisiana, we maintain that the other two, R. Anderson and Shelton, are *proved* to have been in the same predicament. But we hold the admitted defect of citizenship in the first two above fatal to the jurisdiction, whatever may be the weigh⁺ of evidence as to the citizenship of the other two.

2. The case made out by the bill is not one susceptible of relief in equity ; but one wherein a plain, adequate, and complete remedy might have been had at law.

Taking up the second point first, he contended that it was not a case where equity would interpose, because the Louisiana code gives a more simple remedy. The object of the com-

plainants is to set aside the judgment of Mosely and Bouldin against Perry. This can be done by an action of nullity and rescission. Code of Practice, 604 – 616 ; 7 Cranch, 88, 90.

1st point. There are five parties here, and four not citizens of Louisiana. But parties must be of the same State with each other. 3 Cranch, 267 ; 5 Wheat. 424, 434.

There is a difference between citizenship and residence in a State. Merely residing there does not confer citizenship. In Louisiana, a person wishing to acquire citizenship must give notice. 2 Dig. Laws La. 308.

As to setting aside the judgment, the rule is, that a party may justify under a judgment. 6 Peters, 8 ; 10 Peters, 449 ; 6 Cranch, 173 ; 4 Dall. 8 ; 4 Cranch, 328.

The fact of an attorney's having authority to appear is not traversable. The only remedy to the party aggrieved is an action against the attorney. 1 Tidd, 95 ; 3 Howard, 343.

*Mr. Crittenden*, for the appellees, said that the objection to the jurisdiction of the court, founded on the allegation that there was a sufficient remedy at law, could not be maintained. How has this court lost this branch of its equity jurisdiction ? In Pennsylvania, they try equity cases in an action of ejectment ; but this court has not considered this as a sufficient reason for waiving its equity jurisdiction. So, in Louisiana, law and equity are all mixed up together. Besides, here is an equitable lien on the property for the cash payment, which can only be enforced in equity.

As to citizenship. The proof is, that the parties lived in Louisiana for three years, and built a house upon the property. We found them there. They claim the option of being citizens. A citizen of the United States residing in any State is a citizen of that State. 6 Peters, 762.

As to the judgment of Mosely and Bouldin. Perry was represented in court by an unauthorized attorney, and therefore the judgment does not bind him. 9 Wheat. 829 ; 1 T. R. 62 ; 2 Desaussure, 380 ; Caldwell v. Shields, 2 Rob. ; 6 Johns. 296 ; ibid. 317, 318 ; 2 Watts, 493 ; 3 Pa. Rep. 75 (Judge Grier says this has been overruled); 3 Robinson, 94 ; Code of Practice, art. 605.

Even if the judgment was valid, the sale was not made according to law. If the property was immovable, then the requisite notice has not been given. Code of Practice, art. 670.

Slaves are considered immovable. Civil Code, art. 461. Here every thing was sold, land, slaves, and notes. Civil Code, art. 462, 2424, 3249.

All formalities must be complied with in a forced sale. 3 La. Rep. 421 ; 4 ib. 150, 207 ; 11 Martin, 610, 675 ; 8 N. S. 246.

The thing sold was the entire debt of $40,000. But it did not all belong to the defendant, and was bought for $5,000 by the very man who owed the $40,000, and who must have known that one half belonged to Tiffin. The evidence shows that Anderson knew that the first note had been indorsed to Tiffin. (*Mr. Crittenden* here referred to and commented upon it.)

By the Civil Code, art. 2622, Anderson must be a trustee for his vendor, who can reclaim the property by repaying what it cost. Story, Eq. §§ 789, 1211, 1212, where cases are cited; Grattan's Rep. 188; 2 Mylne & Craig, 361; 7 Dana, 46; Civil Code, art. 21, 1958 – 1960, 2619.

(*Mr. Crittenden* then commented upon the proceedings of the parish court.)

*Mr. Jones,* in reply and conclusion.

As to the judgment of Mosely and Bouldin. It is objected, that the defendant never was served with process; but that is cured by an appearance. Was there one? The record says yes. A sworn attorney appeared and answered for both defendants. If the correctness of this is impeached, it is for the other party to do it, and they must do it clearly. There must be the plainest evidence. Crawford is the only witness. We might object to the interrogatories. They are all leading ones. But he shows that he had authority. He was employed to defend the suit. What suit? Against both defendants. He refers to letters. Why did he not produce them? Is there any evidence that John M. Perry had no authority to employ counsel? There is not. Why did he not swear so? He was as good a witness as Crawford. In an affidavit, John M. Perry swears that he is the agent and attorney of Lilburn P. Perry. A bond is signed L. P. Perry, "by his attorney, John M. Perry." Crawford's evidence is therefore only negative.

(*Mr. Jones* then proceeded to reply to the other arguments of *Mr. Crittenden* upon the facts of the case.)

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal in chancery from the Circuit Court for the Eastern District of Louisiana.

On the 10th of April, 1838, the complainants below sold to one Samuel Anderson a plantation and negroes situated in the parish of Madison, Louisiana, for seventy-five thousand dollars. Thirty-five thousand dollars of this sum were paid in part by surrendering a note which Anderson held against Lilburn P. Perry, the complainant, and his father, John M. Perry, for thirteen thousand dollars; and by the assignment of a note on H. R. Austin, J. B. Ragan, and Wylie Bohannon, of the State of

Mississippi, for eighteen thousand two hundred eighty-two dollars and sixty-five cents, payable to Samuel Anderson on the 1st of April, 1839.

A mortgage was executed on the plantation and slaves, to secure the payment of forty thousand dollars, the residue of the purchase-money. At the same time, three notes or bonds were executed to Lilburn P. Perry by Samuel Anderson, each for the sum of thirteen thousand three hundred and thirty-three dollars, payable on the first day of January, 1842, 1843, and 1844.

On the 11th of January, 1839, Mosely and Bouldin, citizens of Virginia, instituted a suit in the Circuit Court against L. P. Perry and John M. Perry, and obtained a judgment against them for seven thou~and five hundred dollars. An execution was issued, in virtue of which, under the laws of Louisiana, the marshal levied upon the three notes above stated and the mortgage, which were sold by him, on a credit of twelve months, to Samuel Anderson, the mortgagor, for five thousand dollars.

Some time after this purchase, Robert Anderson, the father of Samuel, and Nelson F. Shelton, his uncle, having procured a judgment against Samuel Anderson in the State court of Louisiana, sold the mortgaged property and slaves, and they became the purchasers thereof and have the possession of the plantation and slaves under the purchase, claiming that the mortgage by Anderson to Perry has been extinguished.

The decree of the Circuit Court was entered against Samuel Anderson, Robert Anderson, and Nelson F. Shelton et. al., that within sixty days they should pay to the complainants forty thousand dollars, with interest from the first day of January, 1842, and in default of such payment that they should deliver to the complainants the possession of the plantation and slaves. From this decree Shelton only has appealed.

The defendants pleaded that the Circuit Court had no jurisdiction of the case, as Mosely and Bouldin, Robert Anderson, and Shelton were citizens of Virginia, and the complainants were citizens of Missouri. Shelton being the only appellant, the objection of citizenship must be limited to him.

Under the act of Congress, jurisdiction may be exercised by the courts of the United States "between a citizen of the State where the suit is brought, and a citizen of another State." "But no person shall be arrested in one district for trial in another, in any civil action." If Shelton be not a citizen of Louisiana, having raised the question of jurisdiction by a plea, this suit cannot be sustained against him.

In the declaration or bill an allegation of citizenship of the parties must be made, as it has been held that an averment of

residence is insufficient. But the proof of citizenship, when denied, may be satisfactory, although all the privileges and rights of a citizen may not be shown to have been claimed or exercised by the individual.

Shelton and wife, they having no children, became residents of Louisiana in the fall of 1840, more than two years before the commencement of this suit. Since their residence commenced, they have been absent from the State only once, a short time, on a visit to a watering-place in Mississippi. They have resided the greater part of the time on the plantation in controversy, cultivating and improving it by the labor of the slaves. Within this time, a more comfortable and secure dwelling-house has been constructed. In the winter of 1840 or 1841, Shelton observed to a witness, that he considered himself a resident of the State of Louisiana.

There is no proof that he has voted at any election in Louisiana, or served on a jury. At one time he refused to vote, but that was after this suit was commenced. Some of the witnesses say that he sometimes spoke of returning to Virginia, whether on a visit or to reside there permanently does not appear.

Where an individual has resided in a State for a considerable time, being engaged in the prosecution of business, he may well be presumed to be a citizen of such State, unless the contrary appear. And this presumption is strengthened where the individual lives on a plantation and cultivates it with a large force, as in the case of Shelton, claiming and improving the property as his own.

On a change of domicile from one State to another, citizenship may depend upon the intention of the individual. But this intention may be shown more satisfactorily by acts than declarations. An exercise of the right of suffrage is conclusive on the subject; but acquiring a right of suffrage, accompanied by acts which show a permanent location, unexplained, may be sufficient. The facts proved in this case authorize the conclusion, that Shelton was a citizen of Louisiana, within the act of Congress, so as to give jurisdiction to the Circuit Court.

The defendants also demur to the plaintiff's bill, on the ground, that the complainants have plain and adequate relief at law.

The demurrer is clearly unsustainable. Fraud is alleged in the bill, and relief is prayed against a judgment and a judicial sale of the property in controversy. These and other matters stated in the bill show, that, if the complainants shall be entitled to relief, a court of equity only can give it.

The great question in the case arises out of the judicial sale

16 *

of the mortgage debt to Anderson, the mortgagor, under a judgment obtained by Mosely and Bouldin against L. P. Perry and John M. Perry. If by this sale the mortgage debt has been extinguished, no relief can be given to the complainants.

Had the Circuit Court which rendered that judgment jurisdiction of the case? The plaintiffs were citizens of Virginia, John M. Perry was a citizen of Louisiana, and L. P. Perry, of Missouri. No process was served upon L. P. Perry, nor does it appear that he had notice of the suit until long after the proceedings were had. But there was an appearance by counsel for the defendants, and defence was made to the action. This being done by a regularly practising attorney, it affords *primâ facie* evidence, at least, of an appearance in the suit by both the defendants. Any individual may waive process, and appear voluntarily.

John M. Perry acted in some matters as the agent of L. P. Perry; but it does not appear that he had authority to waive process and detend the suit. And Crawford, the attorney, testified, that "he had no recollection of having received any authority directly or indirectly from L. P. Perry, or from any one in his behalf, to defend the suit. He received a letter from John M. Perry, informing him that he would see upon the records of the court of the United States a suit commenced against him and others by Mosely and Bouldin, and he wished to employ him to defend it." And he says, that "he regards his appearance on behalf of any other person than John M. Perry in said suit as an inadvertence on his part."

This evidence does not contradict the record, but explains it. The appearance was the act of the counsel, and not the act of the court. Had the entry been, that L. P. Perry came personally into court and waived process, it could not have been controverted. But the appearance by counsel who had no authority to waive process, or to defend the suit for L. P. Perry, may be explained. An appearance by counsel under such circumstances, to the prejudice of a party, subjects the counsel to damages; but this would not sufficiently protect the rights of the defendant. He is not bound by the proceedings, and there is no other principle which can afford him adequate protection. The judgment, therefore, against L. P. Perry must be considered a nullity, and consequently did not authorize the seizure and sale of his property.

An execution sale under a fraudulent judgment is valid, if the purchaser had no knowledge of the fraud. But in this case L. P. Perry was not amenable to the jurisdiction of the court, and did no act to authorize the judgment. He cannot, therefore, be affected by it, or by any proceedings under it.

In this view, it is unnecessary to consider the objections to the procedure under the execution. The debt of forty thousand dollars was sold as the property of L. P. Perry, when one of the notes had been assigned to Tiffin, and an equal interest in the other two belonged to him. Of this, Anderson, the purchaser, had notice. It would be difficult to sustain this sale on legal principles. Anderson, it is insisted, at the marshal's sale, purchased a "litigious right," and by article 2622 of the Civil Code, "he, against whom a litigious right has been transferred may be released by paying the transferee the real price of the transfer, together with interest from its date."

The judgment being void for want of jurisdiction in the court, no right passed to Samuel Anderson under the marshal's sale; consequently the mortgage remains a subsisting lien. Nor is this lien affected by the mortgage subsequently executed by Samuel to his father, Robert Anderson, and his uncle, Shelton. After the mortgage to the complainants was supposed to be extinguished by the judicial sale, Robert Anderson and Shelton procured in a State court a foreclosure of their mortgage which had been previously given on the plantation and slaves, and they became the purchasers at the sale for thirty-six thousand dollars. If this procedure were bonâ fide, the purchase was made subject to the prior mortgage.

On the 23d of November, 1839, a bill was filed in the District Court for the parish of Madison, by L. P. Perry, against Samuel Anderson, representing the debt due, secured by mortgage, and that he was in possession of the plantation and slaves; and, fearing that he might remove the slaves or other property, an attachment was prayed. No service was made of this writ, and the suit was discontinued, the 28th of November, 1839. A judgment seems to have been irregularly entered by default, the 17th of November, 1840, and on the next day an answer was filed by Anderson, setting up the sale and extinguishment of the mortgage debt, and praying that the notes and mortgage might be decreed as extinguished, and be delivered up. Afterwards, on the 20th of May, 1841, this suit was dismissed by the order of the court. And on the 19th of May, 1842, motion having been previously made and argued in the District Court, on proof that "the defendant, Samuel Anderson, since the institution of this suit has become the true and legal owner of the three notes sued on, and the indebtedness set forth in plaintiff's petition having been extinguished by confusion, the court decreed that they should be delivered up." And this decree is relied on as a bar to the present suit.

At the time the above decree was made, this suit was pend-

ing in the Circuit Court, to enforce the payment of the notes directed to be given up by the District Court. The object of the petition before that court was not the recovery of the money, for the notes were not due when it was filed, but to prevent Samuel Anderson from removing the negroes, wasting the crops, &c., on the plantation. But this petition had been discontinued for more than a year, when Anderson filed his answer, setting up his purchase of the notes under a judicial sale, and that the mortgage debt was extinguished. And on this case, made in the answer in no way responsive to the petition, which had long before been abandoned, the parish judge, on motion, founded his decree that the mortgage debt was extinguished, and directed the notes to be delivered up.

It is difficult to characterize in proper terms this proceeding of the State court. The petition having been abandoned, there was no pretence of jurisdiction for the subsequent steps taken at the instance of Anderson. There was nothing in the petition, had it not been abandoned, which would have authorized such a procedure. The circumstances under which this judicial action was had show a fraudulent contrivance, on the part of Anderson, to defeat his adversaries by the interposition of the State court. The whole case was pending in the Circuit Court of the United States, and this interference of the State court was wholly unauthorized and void.

The Mississippi note for eighteen thousand two hundred and sixty-five dollars, which was assigned to complainants in part payment of the purchase-money, was worthless. The parties to it were insolvent when it was assigned to the complainants, which fact was known to the assignor, Samuel Anderson. He acted fraudulently in representing the note to be good, when he knew it was valueless. By his own confession, after the assignment, the fraud is established.

It is insisted, that, this note having been imposed upon the complainants as a good note, by the fraudulent representation of Anderson, they as vendors have an equitable lien on the plantation and slaves for the amount of it. If the receipt of a note of a third person in payment of the purchase-money be a waiver of an equitable lien on the real estate conveyed, yet it would seem, where a fraud had been practised in the assignment of the note, there would be no waiver. But however this may be, it is not strongly urged, as it is believed that the mortgage debt, with the interest, will be nearly equal to the value of the plantation.

The history of this case shows a successful course of fraudulent combination, rarely exhibited in a court of justice. Samuel Anderson purchased the plantation and slaves of the com-

plainant, for seventy-five thousand dollars. He gave up a note on L. P. Perry for thirteen thousand dollars, which was in fact the only payment of any value. The Mississippi note was worthless, and the mortgage debt he purchased, on a credit of twelve months, for five thousand dollars. He must have received more than that sum as the product of the plantation. So that in fact he acquired the plantation and negroes for thirteen thousand dollars, which he purchased at seventy-five thousand dollars. By this operation he saved of the purchase-money sixty-two thousand dollars. Such a result must strike every one as having been procured through fraud.

It is unnecessary to consider the means through which Robert Anderson, the father of Samuel, and his uncle Shelton, acquired title to the above property. The lien of the complainants' mortgage is paramount to any title or lien which they assert.

No deduction will be made from the mortgage for the five thousand dollars which Samuel Anderson may have paid to Mosely and Bouldin, under whose judgment he purchased the mortgage debt. He has received from the products of the plantation, while in possession of it, more than that sum. But if this were not the case, his fraudulent act in the transfer of the Mississippi note is a sufficient ground for the refusal of the credit.

In their decree, the Circuit Court directed the sum of forty thousand dollars to be paid, with interest from the first day of January, 1842. In this the court erred. The three notes were each for thirteen thousand three hundred and thirty-three dollars; the first being payable the first of January, 1842, the second, the first of January, 1843, and the third, the first of January, 1844. The interest should have been calculated on the notes from the time they respectively became due. With this modification of the decree of the Circuit Court, a decree will be here entered, to be transmitted to the Circuit Court, and if the money shall not be paid within ninety days from the filing of this decree in the Circuit Court, the mortgage shall be foreclosed, and the complainants put in possession of the property.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Louisiana, and was argued by counsel. On consideration whereof, it is the opinion of this court, that the said Circuit Court erred in directing the interest to be computed on the ($ 40,000) forty thousand dollars from the first day of January, 1842, instead of computing the interest on each of the three

several notes for ($ 13,333⅓) thirteen thousand three hundred and thirty-three dollars and thirty-three and a third cents from the times the said notes respectively became due ; and that if the money shall not be paid within ninety days from the filing of the mandate of this court in the said Circuit Court, that then the said mortgage shall be foreclosed, and the complainants put in the possession of the property, and that in that case the equity of redemption therein be for ever barred and precluded ; and that if the said money, with interest as aforesaid, be duly paid as aforesaid, that then the said mortgage should be held discharged, and Nelson F. Shelton put in possession of the said property. Whereupon it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be and the same is hereby reversed, that each party pay his own costs in this court, and that this cause be and the same is hereby remanded to the said Circuit Court, to be proceeded with in conformity to the opinion of this court, and as to law and justice shall appertain.