TUIKA TUIKA, Jr. and SU'A CARL
SCHUSTER, Appellants

v.

CHIEF ELECTION OFFICER, BOARD OF REGISTRATION,
and FIAAOGA SIATU'U, Appellees

High Court of American Samoa
Appellate Division

AP No. 34-88

November 23, 1988

Before REES, Associate Justice, TOGAFAU*, Acting
Associate Justice, LUALEMAGA, Associate Judge, and
AFUOLA, Associate Judge.

Counsel: For Appellants, Levaula S. Kamu,
               pro hac vice
           For Appellees, Caroline B. Crenna,
               Assistant Attorney General, and
               Enere Levi, Assistant Attorney General

Per REES, J.:

Appellants seek a new election in House of
Representatives District 7 on the ground that the
winning candidate, Fiaaoga Siatu'u, is a registered
matai in Western Samoa and has voted in
parliamentary elections there.

The appellees have moved to dismiss on the
ground that the Court has no jurisdiction to hear
an election appeal filed later than 4:30 p.m. on
the seventh calendar day following the election.
A.S.C.A. § 6.0903(a). This appeal was filed at
8:00 p.m. on November 15, 1988, the seventh
calendar day after the election --- three and one-
half hours late.

On the state of the pleadings and arguments in
this case we are compelled to agree with the
appellees. When the legislature takes the trouble
to specify not just the date but the exact time by
which an act must be done, a court should not
presume to substitute another date and time. At
the time this case was heard, counsel for
appellants read the Court passages from American
Jurisprudence to the effect that courts do not
obtain jurisdiction of election cases until after
the final results are announced. Since the final
results of this election were not announced until
November 16, appellants argue that the deadline for
challenging the election cannot possibly have been
November 15. The Court gave counsel twenty-four
hours to cite a case in which this rule had been
applied to a statute such as A.S.C.A. § 6.0903(a),
which computes the time for challenging an election
from the day of the election rather than from the

---

* Honorable Malaetasi M. Togafau, Judge,
District Court of American Samoa, serving by
designation of the Secretary of the Interior.

announcement of the results, and no such case has been cited.

Moreover, the appellants knew what they needed to know in order to file this appeal --- that Siatu'u had voted in Western Samoa in 1985, and that the Chief Election Officer and the Board of Registration nevertheless regarded him as a resident and a qualified voter in District 7 --- by November 14 at the very latest. It is true that appellant Schuster, who was sixteen votes behind Siatu'u in the unofficial returns, could not be absolutely sure that this count would not be changed when the official results were announced. But this was no reason to delay beyond the statutory deadline the filing of a challenge to Siatu'u's eligibility as a candidate, which did not depend in any way on the vote count.

If this were a case in which the appellees had made it impossible for appellants to meet the deadline --- if, for instance, one of the appellants were the unofficial winner but had been disqualified by the Chief Election Officer eight days after the election --- our decision on this issue would be a difficult one. On the present facts, and in the absence of any cited authority for the appellants' argument that a statute such as A.S.C.A. § 6.0903(a) should not be regarded as mandatory, we hold that it is mandatory and that we have no jurisdiction to hear the appeal.

Even if we did have jurisdiction, however, appellees would prevail on the merits. Appellants argue that Siatu'u lost his status as a United States national when he registered his matai title in Western Samoa, since (1) under the law of Western Samoa only a Western Samoan citizen can hold a matai title and (2) in order to become a Western Samoan citizen one must take an oath renouncing the citizenship of any other nation. This proves, however, only that Siatu'u _either_ took an oath to renounce his status as a United States national _or_ violated the law of Western Samoa when he registered his matai title. His testimony is that he has never taken any such oath and has never become a citizen of Western Samoa. If not, he appears to have violated section 8 of the Samoan

Status Act of Western Samoa,[1] but he has not lost his status as a United States national.

Appellants also contend that even if Siatu'u did not lose his United States national status by registering his matai title, he lost it by voting. They rely on a statement in Shelton v. Tiffin, 47 U.S. (6 How.) 163, 185 (1848):

> [C]itizenship may depend upon the intention of the individual. But this intention may be shown more satisfactorily by acts than declarations. An exercise of the right of suffrage is conclusive upon the subject.

Shelton, however, concerned whether a party who had moved from Missouri to Louisiana had become a citizen of the latter state for the purpose of conferring diversity jurisdiction on the federal courts. From the willingness of the Supreme Court in 1848 to accept voting as conclusive evidence on this point, it does not follow that voting in a foreign election is also conclusive of an intention to take the much weightier decision to renounce the rights of citizenship in the United States. More to the point is 8 U.S.C. § 1481, which provides a number of ways in which a person can lose United States citizenship. The list includes naturalization in a foreign state, or taking an oath of allegiance to such a state, but does not include voting in a foreign election.

---

[1] Appellant Su'a Carl Schuster, who testified that he holds the title Su'a in Western Samoa but has never registered the title and is not a citizen of Western Samoa, would also appear to have run afoul of section 8, which makes it an offense for any non-citizen to permit a matai title to be conferred upon him. If either Schuster or Siatu'u has used his Western Samoan title in American Samoa, he would appear to have committed a misdemeanor under A.S.C.A. § 1.0414, which prohibits the use of unregistered matai titles. This law appears to be honored as often in the breach as in the observance; we have no way of knowing whether the same is true of the Western Samoa statutes cited by appellants.

60

The list of voters in Western Samoa outside the township of Apia consists entirely of the list of registered matai title holders. Appellee Siatu'u testified that he was born in American Samoa and has lived here all his life; that he took the title Peseta in the village of Pu'apu'a in Western Samoa for family reasons unrelated to a desire to participate in Western Samoa politics; but that on one or more occasions his family in Western Samoa prevailed upon him to exercise the voting right appurtenant to his Peseta title. After he did so he returned to American Samoa where he continued to live, to participate in community affairs, and to be elected several times to the Legislature. It is clear that he did not intend to renounce his rights as a United States national.

When Siatu'u voted in Western Samoa he did lose his "residence in the territory." A.S.C.A. § 6.0212(g). However, his residency recommenced as soon as he returned to American Samoa with the intention to remain permanently. A.S.C.A. § 6.0212(a). By the time of the 1988 election he had resided here for more than one year since casting his vote in Western Samoa in 1985 and returning to American Samoa, and so he was eligible to run for the office of Representative. See Rev'd Const. Am. Samoa art. II § 3(c).

It is arguable that after officially losing his residence in 1985 Siatu'u should have been purged from the voting list and required to re-register. This, however, is irrelevant to whether he was a qualified candidate for Representative; the territorial constitution does not require that the candidate be a registered voter for a year or even a day, but only that he "have lived in American Samoa for a total of at least 5 years and have been a bona fide resident of the representative district from which he is elected for at least 1 year next preceding his election." Id. art. II § 3(c) (emphasis added). Siatu'u met these conditions.

We cannot emphasize too strongly that the Court does not confer its approval on the act of voting in foreign elections while attempting to retain the advantages of citizenship in American Samoa. Perhaps penalties for such acts, including the loss of the right to vote in American Samoa for an extended period of time, should be prescribed by

law.  The law as it stands, however, does not appear to prescribe such penalties.

The appeal is dismissed.