MoEaklaND, J.,
delivered the opinion of the court:
George Courtney, Sr., died in 1849, leaving a will, by *361 whicb he directed his estate, after the death of his wife, to be equally divided between his seven children and the complainant, his grandson, with the proviso' that if the complainant should die before attaining his majority, his share should go to the testator’s children. John S. Dyer and Jacob Haun qualiiied as administrators with the will annexed, and settled up the estate and paid off the other legatees, but retained the share of the complainant in their hands, which they kept a't interest upon notes payable to them as administrators. The complainant attained his majority in 1864, and filed this bill the eighth of April, 1873, to have a decree against the administrators and their sureties for the amount due him under said will. No question is made as to complainant’s rights under his grandfather’s will, or as to the amount due him. But the whole of the fund is claimed by the defendant, John S. Dyer, upon the following grounds:
On the twenty-sixth of April, 1865, said Dyer brought an action of trespass against the complainant, Oourtnev, in the circuit court of Greene county, and had, as he claims, the entire fund in the hands of himself and Haun, as administrator, attached; that in this action he obtained judgment against the complainant for a sum greater than the fund now claimed, and by order of the court the fund so attached was paid over to him (Dyer) in part satisfaction of his said judgment.
Bor the complainant it is insisted that this judgment is absolutely void, and no protection to' the defendants, ami this is the controlling question in the case. The action urns commenced by the issuance of an original summons and an ancillary attachment, returnable to> the June term, 1865, of the circuit court of Greene county. The summons was returned, the defendant “not found.” The attachment was returned, “No property to be found. John S. Dyer and Jacob Haun garnisheed.”
At the return term, June, 1865, the record shows that *362 Haun and Dyer appeared and answered that they had in their hands, in notes payable to them as administrators of George Courtney, Sr., the sum of $1,521.40, now due James G. W. Courtney, the complainant, as his part of his grandfather’s estace. Whereupon the court ordered the notes immediately turned over to the clerk of the court, subject to the levy of the attachment in the case. W. H. Maxwell, Esq., an attorney, entered his motion to quash the attachment, and it also appears that the defendant,-by “his counsel,” took a bill of exceptions to the action of the court above indicated. A declaration was filed on the fifteenth of June, and on the sixteenth an entry made giving the defendant leave to plead in justification, in abatement, or in bar, so as not to delay the trial at the next term.
It appears that the order to turn over the notes, etc., to the clerk was obeyed on the seventh of August, 1865. At the next term (October) an entry appears showing that “on application of W. H. Maxwell, defendant’s attorney, by letter to the court, defendant is allowed until the February term to plead any legal defense, or demur, so as not to delay.” At the February term, 1866, no steps were taken, but at the June term following a judgment by default was taken by the plaintiff, but upon his own motiou set aside, the return of the sheriff upon the original summons amended so as to read, “the defendants not to be found in my county.” Upon which a judicial attachment was awarded, issued, and levied upon the notes in the hands of the clerk, and also some money that had been paid in, and returned to the October term. Publication was ordered, and, as we infer, made, and at the October term, 1866, judgment by default was rendered in favor of the plaintiff. Writ of inquiry and final judgment at the same term, and subsequently the notes were ordered turned over to said John S..Dyer.
Such is the record as it appears in the circuit court.
*363 In his bill the complainant- charges that he had no knowledge of the pending of said canse, as he has resided in the State of Arkansas ever since the close of the war, and that he did not authorize said Maxwell, nr any o-ne else, to appear for him as his attorney.
The proceedings of the circuit court, aside from the appearance of the defendant by attorney, were not sufficient to give the court jurisdiction of the person of the defendant in the cause, and but for the record showing that the defendant appeared by attorney, the judgment would be void upon its face, as there was no notice, in law or in fact, to the defendant in the cause. This is apparent, and cannot be a matter of serious doubt. But as the record showed an appearance by the defendant by attorney at the ’first, and also at the second term, the judgment is not void upon the face of the record. The discontinuance of process after the first term, would not be fatal to the case, as the defendant had already appeared. No further process or steps to bring the defendant into court wei*e necessary, and the same remark applies to the action of the court in awarding a judicial attachment, and the levy of the same. All this v\ as insufficient and nugatory as to bringing the defendant .into court, but if the defendant had in fact entered his appearance at the first term, as the record recites, the subsequent irregularities would not vitiate the judgment. The defendant having once entered his appearance, and the court having acquired personal jurisdiction, still retained it, and a personal judgment, following this proceeding, would not be void. In the contemplation of law he was in court during all these proceedings, and although the proceedings were irregular, the judgment was not void. The effect of the judgment of the court upon the attachment and garnishment in ordering the notes and money turned over to the clerk, and subsequently ordering the clerk to turn the same over to said Dyer, is a different *364 question. How far suoli action of tbe court was void or simply erroneous, is a different question.
The judgment might bo good as a personal judgment against the defendant, without being valid as to the disposition of the fund under the attachment.' But notwithstanding this judgment upon the face of the circuit court record is valid, this rests alone upon the fact that the record shows that t-he defendant appeared by attorney, and the complainant now avers that this was entirely without notice to or authority from him, and upon the issue made by the answer we must hold that the allegation of the bill is sustained. It was admitted that the complainant would testify as a witness; that he had no knowledge of the suit, and did not authorize any attorney to appear for him, and that this is to be taken as equivalent to his deposition to tho same effect. No attempt was made to refute this by the lestimony of the attorney, or otherwise. It is true, records ought not thus to be contradicted, except upon clear proof; but complainant was a, competent witness. The fact was peculiarly within his knowledge. It is a fact of a negative character, and from its nature not ordinarily susceptible of any more direct proof, unless by calling the; attorney, and in view of the attitude in which the attorney would be placed, we think the complainant ought not to be required to call him. The complainant’s testimony on this poinl is corroborated by the fact, which seems not to be disputed, that during all this time the complainant resided out of the state, and was not in fact personally present in the court, nor is there any evidence to bring home to him actual knowledge of the proceeding; and the fact that the attorney finally abandoned the case, and let judgment go- by default, when it -was a case where be should certainly have defended, further indicates that his action in entering defendant’s appearance was inadvertent and without authority.
"We will therefore take the allegation of the bill as es- *365 tablisliKl on tins question. The question then Is, will a complainant he allowed by a bill in equity to dispute the authority of an attorney to appear for him, and thus show the judgment against him, founded upon such appearance, to be absolutely void? We think -he may. It was held in Ridgeway v. The Bank of Tennessee, 11 Hum., 523, that a complainant might show in this mode that the sheriff’s return — that he had served the process — was false, and that, in fact, the complainant had no notice of the proceeding at law, and the judgment was therefore void.
We see no difference in principle between that case and this. The complainant may as well be allowed to show that the appearance of the attorney was without authority as to show that the-return of the sheriff was false. In both cases it rests upon the ground that no person should be held bound by a judgment against him, where he has had no notice in law, or day in co-urt, and where in fact the court had no jurisdiction as to him. That the party in such case might have a remedy against the attorney or sheriff, does not alter the case or make the judgment valid. But this direct point was decided in Shelton v. Tiffin, 6 How., 163.
We hold, therefore, that the judgment, by this bill is shown to have been without jurisdiction of the defendant, and is void, and is no ground of defense in favor of the defendant Dyer; that complainant is undoubtedly entitled to a decree against said Dyer for the amount In his hands; that is, the legacy due him.
The next question is whether the defendant Haun occupies any different attitude. It appears that Haun was the active administrator of George Courtney’s estate, and had the notes and effects in his hands; that the sureties on the administration bond made this an express stipulation as the condition upon which they became bound. He was summoned to appear as garnishee, and was bound to obey the summons. He had no connection with Dyer’s suit. *366 He appeared and answered truly, tie exhibited the will of George Courtney, Sr. tie stated that the amount in bis bands was in notes payable to himself and Dyer as administrators; that it was due J. G. "W. Courtney under said will, the widow being dead, and said Courtney bay-time, who used and occupied it has his own. It is in proof, ing arrived at the age of twenty-one years, and the other legatees having been paid in full. While it is true that these debts were not thus subject to be attached as the property of the defendant in the action, it was no wrong to Haun that this was done*. His answer was true. It was the error of the court in assuming that the notes were thus the subject of attachment. The court had personal jurisdiction of Haun, and made the order, and Haun was bound to obey it. The order was peremptory, and to be obeyed immediately. Moreover, at the time, according to the circuit court record, the defendant in the action was before the court — had entered his appearance by attorney. Haun could not know that this appearance was without authority. Hnder these circumstances Haun must be held justifiable in obeying the order of the court, whatever be the legal effect thereof. The effect certainly was to< take from Haun the evidence of the debts due to himself and Dyer as administrators. Haun was not personally indebted to the complainant. He, however, had in his hands a fund, which, as trustee, he was bound to use all proper diligence to preserve and protect, and in the preservation of this fund he was bound to observe the utmost good faith. If the fund was lost, from any fault or want of diligence or good faith upon the part of Haun, then he must make good the loss. If, however, it was taken from his hands by a force he could not resist, without fault on his part, he is not liable. The law requires good faith and diligence of a trustee, but he is not required to insure the fund. The fund was due 'to Haun and Dyer from the several parties to whom they had loaned the money. The notes were *367 but tbe evidence of these debts. The transfer of these notes from Iiaun to the clerk, and from the clerk to Dyer, did not probably change the legal relations of the. parties; it perhaps did not transfer to Dyer, individually,’the indebtedness of the several parties, but the action of the court took from Haun the evidence of these debts, and deprived him of the power to control or attend to their collection. He could not regain possession of the notes without acting in contempt of the order of the court, nor could he assume any control of the fund, without coming in direct conflict with this order. But was Haun bound, by his, duty, as trustee, to institute any proceeding to correct the judgment of the circuit court, and regain control of the fund? He could not appeal from the order to surrender the notes to the clerk. This was not such an order as could have been appealed from, not being a final judgment, and as the record showed that the complainant was a party, and as he in equity owned the fund, Haun might well have assumed that it was complainant’s duty to- take the necessary steps to correct the error affecting him. The case, then, is this: In the suit of Dyer against the complainant, according to the record of the circuit court, that court had personal jurisdiction of the defendant in the action, and.rendered a personal judgment against him for a sum greater than the fund now in controversy. The court also in fact "had actual personal jurisdiction of the defendant Haun, by the service of, lawful process upon him, which he was bound to obey. His appearance was proper, and his answer was true,- and he was compelled to obey the order of the court and surrender the evidence of debt in his hands, thereby in effect depriving him of the power to act further as trustee. While the judgment of the court was not legal, yet the order upon Haun to do what he did do, could not be by him treated as a nullity. So far as Haun could see or know, the present complainant having entered his appearance to that action, was bound to liti *368 gate the same and procure the correction of such errors as may hare been committed against him. But no- complaint was made, and Haun was only informed, so far as appears, by the filing of the present bill, that the complainant had not in fact authorized his appearance in the former case. The question then is, shall Haun be held responsible for any loss that may have happened to the fund during the time the same was in the hands of Dyer by the order of the circuit court, before the filing of this bill, and during which time ílaun was, in effect, deprived of any power or authority over the fund. It is true Dyer was Haun’s co-administrator, and having -executed a joint bond, they would have been jointly liable so- long as the fund remained in the hands of either, and it is argued that as the fund is now in the hands of Dyer, there is the same reason for holding them both bound as there would have been if Dyer had obtained possession of the fund without the order of the court or proceeding in question. But the difference is that in that event Haun would not have been deprived of his joint right of control, and could have protected himself; but by the action of the court Haun was prevented from exercising his authority and power as joint trustee for the time, and it would be unjust to hold him responsible for losses during the time he was not permitted to act.
It is true that as complainant was not in fact a party to the judgment, he is not to- be bound thereby, but Haun should not be held responsible for losses that occurred by his submitting to a power he could not resist. He was deprived of his power to act, by that which was equivalent to vis major, or superior force. -Haun preserved the fund through the war; was able to account for all that went into his hands; his only fault was in submitting to the orders of a court of general jurisdiction, when personally brought directly before it, and ordered to do precisely what he did do-. The order of the court turning these notes and money *369 over to Dyer meant, and was intended to mean, tliat Dyer was to hold the same as his own, free from any right of control upon the part of Haim; and Ilann conld not act further without acting in contempt of this order.
It may be argued that this is holding the judgment of the circuit court void, yet giving it effect as protection to the defendant 11’aun. The judgment of the circuit court assuming to give to Dyer the fund due the complainant is void, and the complainant is entitled to recover his money, but Harm was only a trustee, and by order that the court had the power to enforce against him, the control of the fund was taken from him and given to another; and we hold, under the circumstances stated, that he was guilty of no bad faith in failing to institute proceedings to correct the judgment of the circuit court and recover the fund. The complainant’s bill was not filed for nearly nine years after his right to the fund accrued, and not for six or seven years after all obstruction to his right of suit was removed, and under these circumstances we hold he can only recover the fund from the party in whose hands it is, and the defendant Ilaun is released.
The sureties of Harm and Dyer plead the statute of six years, Code, sec. 2775 [Shannon’s Code, sec. 4472], limiting action against the sureties of administrators to six years from the time the cause of action accrued. This statute, we believe, originated with the Code. By a general provision, section 47, actions accruing after the first of October, 1858, are to be governed by the limitations prescribed by the Code. Actions accruing before, that date were subject to the limitations previously existing. Although the bond in this cause was executed in 1849, the complainant’s right to the legacy under his grandfather’s will did not accrue, as the complainant’s counsel agree, and we think correctly, until he arrived at the age of twenty-one years, which was in June, 1864, so that a *370 cause of action did. not in anv event accrue until after October, 1858, and tbe limitations of the. Code apply. But it is further argued for the complainant that no cause of action accrued against the sureties until there was a misapplication of the trust fund or nonfeasance upon the pair of the administrator; that there having been no demand by complainant, there was no cause of action against the sureties until the misappropriation by turning the assets over to Dyer, which occurred in October, 1867. It is probable that what is conceded to have been a misapplication of the fund, occurred earlier than this, and more than six years before the bill was filed. But we hold that the cause of action accrued when the complainant’s right accrued to demand and receive from the administrator the amount due him under said will. It was the duty of the administrator not only to keep and preserve the fund, but to pay it over to the parties entitled, upon their right to it accruing, and upon failure to do this, a right of action accrued in favor of the parties entitled. This, we think, is the meaning of the statute. In this view the complainant’s cause of action accrued in June, 1864, and the bill not having been filed within six years from the first of January, 1867, up to which the statute was suspended, the relief against the sureties is barred.
The decree of the chancellor as to TTaun and the sureties will be affirmed, but reversed as to. Dyer, and a decree in favor of complainants against him or his representatives for the fund due, Dyer’s representatives paying the costs, except the cost of making Haun and the sureties.parties, which will be paid by the complainants.