## LATIMER v. LATIMER.

1. A judgment, regular in form and rendered by a court of competent jurisdiction, is in its nature final and conclusive; but one man cannot be bound by the unauthorized act of another, and, therefore, a judgment recovered by an attorney without the authority or knowledge of the plaintiff may, upon the proof of such fact, be set aside as void.

2. But in an action by the party in whose name the judgment was obtained, against the same defendant for the same recovery, the presumption is in favor of the first attorney's authority, and the plaintiff must prove with satisfactory clearness that she did not authorize or have knowledge of the former action.

3. The burden of proof being with plaintiff, this court concurred with the
   Circuit judge, that plaintiff had not clearly and satisfactorily proved
   the allegations of her complaint, such finding of fact not being mani-
   festly against the weight of the evidence.

Before HUDSON, J., Abbeville, February, 1883.

The opinion states the case.    The Circuit decree, omitting its
statement, was as follows:

The question upon which the case hinges is whether the plain-
tiff had knowledge of the action in the Probate Court, and whether
that suit was with her consent and by her authority instituted.
The defendant contends that she is bound thereby, whether she
had knowledge thereof and sanctioned the same or not; that the
remedy is over against the attorney E. B. Gary, Esq., and W. C.
Latimer, her son.

To sustain this position, he cites as a leading case, *Denton* v.
*Noyes*, 6 *Johns.*, 297, opinion by Chancellor Kent.    I have read
the case carefully, and am far more impressed by the dissenting
opinion of Judge Van Ness, in which is manifested a stronger view
of common sense and a sense of justice than is displayed in the
opinion of the court.    The doctrine of this court is overthrown by
subsequent decisions of the courts of the states of the Union, and
by the Supreme Court of the United States, and Judge Van Ness's
dissenting opinion is now the law in the United States.    *Shelton*
v. *Tiffin*, 16 *How.*, 163; *Freem. Judg.*, § 499, and cases there cited.
These cases adopt the doctrine of Lord Mansfield, laid down in
*Robson* v. *Eaton*, 1 *T. R.*, 62, and it is on this latter case that
the plaintiff relies.    The law of this last case I adopt as my guide
in the present.

Therefore, if Mrs. Amanda M. Latimer is sustained by the
proof, she must have judgment.    But the burden is on her to
prove clearly and satisfactorily that the action for dower was be-
gun, prosecuted, and concluded wholly without her knowledge,
consent, or sanction.    Has she done this?    Betwixt her and her
son, W. C. Latimer, there is on this point an issue of veracity,
which is painful.    All parties are unknown to me, and I have the
additional embarrassment of not having seen them and heard them
testify, the testimony having been taken by the master and sent

up to this court without comment or finding of fact by him, such being the direction in a previous order of this court.

The defendant is nephew of the plaintiff by marriage; the party charged with the fraudulent institution of the suit and receipt of money is her son and is cousin to the defendant, J. S. Latimer. The attorney, Eugene B. Gary, Esq., is well known throughout this and other counties, and is of unimpeachable character.    She once resided in Abbeville, but at the time of the alleged fraud resided no further distant than at Johnston's in Edgefield.  W. C. Latimer resided in Allendale.    That J. S. Latimer confided in' the genuineness of the suit, and that the learned attorney thought he was acting for Mrs. Latimer and by her authority, there can be not a shadow of a doubt.   Shortly before the institution of that suit, Mrs. Latimer was in correspondence with J. S. Latimer about the recovery of this dower, and one, at least, of her letters might be construed into a threat to seek all the law would allow her.    If her son was acting without his mother's knowledge, it was certainly a bold and daring step, as the chances were very decided that she and her other son, who was with her, would find it out.  The chances were decidedly in favor of a discovery by her.

It would be very tedious to review all the testimony in this decree.    I deem it only necessary to say that I have examined it carefully, and counsel have ably discussed it before me, and my conclusion is, that the plaintiff has not clearly and satisfactorily proved the allegations of her complaint.    The direct and positive testimony of W. C. Latimer, and the many circumstances corroborating it, are of such weight as that the proof on the part of the plaintiff does not clearly outweigh them.

It is therefore ordered, adjudged, and decreed, that the recovery in the Court of Probate is a bar to this suit, and that hence the complaint be dismissed, each party to pay his and her own costs respectively; the tenant, Southerland. not to be mulcted in any costs.

*Messrs. B. W. Bettis, jr.*, and *S. C. Cason*, for appellant.

*Messrs. Wells & Orr*, contra.

February 21, 1885. The opinion of the court was delivered by
Mr. Justice McGowan. This was an action brought by the
plaintiff as the widow of Micajah B. Latimer, deceased, for dower
in a tract of land now owned by the defendant. The land had
been aliened by the deceased husband in his life time, but the
plaintiff had not relinquished her dower. The pleadings are not
in the brief, but the Circuit judge says: "The plaintiff alleges
that, on July 26, 1880, the plaintiff's son, W. C. Latimer, repre-
senting himself as her agent, employed Eugene B. Gary, Esq.,
an attorney at law of the Abbeville bar, to institute in the name
of the plaintiff an action in the Court of Probate of said county
against the defendant, James S. Latimer, to recover dower in this
land; the result of which action was a judgment for $716.95, the
assessment in lieu of dower. This sum of money, with the costs
of action, was paid by the defendant, James S. Latimer, to the
sheriff of Abbeville, who had levied upon the said land under the
execution issued upon the judgment aforesaid. The sheriff paid
the same to E. B. Gary, Esq., attorney as aforesaid, who paid the
same to W. C. Latimer. All these proceedings, she alleges, were
had without her consent, authority, or knowledge, and she prays
the court to set the same aside as being a fraud upon her rights,
and to award to her dower in the land, as if no such proceedings
had been had. In his answer, the defendant, J. S. Latimer, ad-
mits the intermarriage of the plaintiff with M. B. Latimer, his
assignor, during coverture, his alienation thereof without a re-
nunciation of dower therein by plaintiff, and that she did have
this estate in the said tract of land. But he insists that the pro-
ceedings in the Court of Probate, set forth in the plaintiff's com-
plaint, were instituted in her name, with her knowledge, and by
her authority; and this recovery he pleads in bar of the plaintiff's
demand."

It was referred to the master to take the testimony, which, con-
sisting for the most part of written correspondence, and answers
to interrogatives filed, is all in the brief, and need not be stated.
The cause was heard by Judge Hudson. The defendant insisted
on two defences: *First*, that the proceedings in the Probate Court,
being entirely formal, and instituted in the name of the plaintiff
by a regular practising attorney, were, as a matter of law, binding

upon the plaintiff, whether she authorized or had knowledge of the same or not; and *second*, that, as matter of fact, the proceedings in the Probate Court were instituted in the name and with the knowledge, approbation, and consent of the plaintiff, and, therefore, were binding upon her.

The judge held with the plaintiff on the question of the plea in bar, that the plaintiff was not bound by the probate proceedings unless she authorized the same, or, having knowledge thereof, acquiesced therein. But upon the question of fact, he held with the defendant, that the plaintiff, having made the allegation that the proceedings were without her authority, consent, or knowledge, was bound to prove the same clearly and satisfactorily; and upon a review of the testimony, he decided that she had failed to do so, concluding as follows: "It would be very tedious to review all the testimony in this decree. I deem it only necessary to say that I have examined it carefully, and counsel have ably discussed it before me, and my conclusion is that the plaintiff has not clearly and satisfactorily proved the allegations of her complaint. The direct and positive testimony of W. C. Latimer, and the many circumstances corroborating it, are of such weight as that the proof on the part of the plaintiff does not clearly outweigh them. It is therefore ordered, adjudged, and decreed, that the recovery in the Court of Probate is a bar to this suit, and that the complaint be dismissed," &c.

From this decree the plaintiff appeals: "I. Because his honor erred in holding that the suit in the Probate Court, set forth in the pleadings, is a bar to the present action, for the reason that the plaintiff had failed to show 'clearly' and 'satisfactorily' that she did not authorize the said suit in the Probate Court. II. Because his honor erred in not finding that the said suit in the Probate Court was unauthorized by the plaintiff, and that she was entitled to recover in this action. III. Because his honor seemed to have been governed, not by the preponderance of the testimony, but by the fact as stated by him, that the testimony on the part of the plaintiff did not clearly outweigh that for the defendant."

The decree was for the defendant, but to meet the possible view, that the ground on which it was rested might not be sustained, he asked the court to consider the other defence of former

recovery, which was overruled below. It is certainly the general rule, that a judgment, regular in form and rendered by a court of competent jurisdiction, is in its nature final and conclusive; but to this rule there are well established exceptions. Is it one of these, where an attorney, regularly admitted to practice and in good standing at the bar, is deceived into bringing an action without authority of the plaintiff? It is certainly correct in principle to maintain that one man cannot be bound by the act of another without authority to do so. But it seems to have been considered that there was something peculiar and exceptional in the case of an attorney, regularly licensed to do such business, when he in the name of another puts into operation the machinery of a court, and thereby obtains its judgment enforceable at law; for the old rule upon the subject was that "when an attorney takes on himself to appear, the court looks no further, but proceeds as if the attorney had sufficient authority, and leaves the party to his action against him." The mere fact of the appearance of the attorney was deemed enough for the opposite party and the court. This may have been for the reason that warrants of attorney were then required to be filed.

But it is not the law or practice with us to require such warrants. They have never been in use in our courts. "The general integrity of gentlemen of the profession furnishes a security against their taking upon themselves to defend or prosecute a cause without authority of the party; and when we add to this the difficulty of concealing such a practice, and the accountability in the event of detection, I cannot perceive why they were ever thought necessary otherwise than as a protection to the counsel himself." *Hellman* v. *McWhennie*, 3 *Rich.*, 364; *Allen* v. *Green*, 1 *Bail.*, 448. We think, however, it is a good rule for attorneys to take warrants of attorney in important cases, and especially when the business is transacted with one claiming to be agent, although the authority of the attorney will be presumed, in the absence of any proof to the contrary. "A record which has such appearance will bind the party until it is proved that the attorney acted without authority." *Hill* v. *Mendenhall*, 21 *Wall.*, 453. The cases are not in entire accord upon the subject, but we concur with the Circuit judge that the weight of authority main-

tains the view, that a judgment recovered by an attorney without the authority or knowledge of the plaintiff may, upon the proof of such fact, be set aside as void. *Robson* v. *Eaton*, 1 *T. R.*, 62; *Bailey* v. *Boyce*, 5 *Rich. Eq.*, 188; *Shelton* v. *Tiffin*, 6 *How.*, 163; *Freem. Judg.*, § 499, and authorities.

Then as to the exceptions of the plaintiff, that the judge erred in finding that the plaintiff had failed to show "clearly and satisfactorily" that she did not authorize the suit in the Probate Court. This was a question of fact, and the practice of the court is well established, that the finding of the court below will not be disturbed unless it is manifestly against the weight of the evidence. It is urged, however, that in considering that question the judge committed error in putting the *onus probandi* on the plaintiff, thereby requiring her to prove a negative, and in finding that her testimony did not "clearly" out-weigh that for the defendant.

There is a general rule of evidence that a party will not be required to prove a negative; but that is not inconsistent with another rule of logic and universal recognition, that he who affirms must prove, and therefore the plaintiff who alleges must make out his case. "The obligation of proving every fact lies upon the party who substantially asserts the affirmation of the issue." 1 *Greenl. Evid.*, § 74. Here the plaintiff alleges that she did not authorize or have knowledge of the probate proceedings. That was the affirmative issue she made, and although expressed in negative form, she was bound to prove it before she could have a recovery. "To the general rule that the burden of proof is on the party holding the affirmative, there are some exceptions in which the proposition, though negative in its terms, must be proved by the party who states it. One class of these exceptions will be found to include those cases in which the plaintiff grounds his right of action upon a negative allegation, and where, of course, the establishment of the negative is an essential element in his case; as for example, in an action for having prosecuted the plaintiff maliciously, or without probable cause," &c. 1 *Greenl. Evid.*, 78.

There was a presumption that the attorney was employed by the plaintiff to sue in the Probate Court, and in such a case, especially the above principle applies. Wherever the law pre-

sumes in favor of the affirmative, it lies on the party who denies the fact to prove it, although it may be a negative. For instance, on a note the law presumes consideration, and if the defendant denies that there is consideration, he must prove it. 2 *Wait. Prac.*, 109; 1 *Stark. Evid.* ; *Williams* v. *East India Co.*, 3 *East*, 192; *Monk* v. *Butler*, 1 *Roll.*, 83. In the last case cited, being a suit for tithes, the defendant pleaded that the plaintiff had not read the 39 articles, and the court put the defendant to prove it though a negative, "for in this case the law will presume that the parson had read the articles, and when the law presumes the affirmative, then the negative has to be proved." We do not think it was error in the judge to require the plaintiff to prove with satisfactory "clearness" the allegation upon which her whole case rested.

In the view that it was incumbent on the plaintiff to make out her case, we have looked carefully through the testimony, and cannot say that the finding of the judge was manifestly against the weight of the evidence. There is direct conflict between the testimony of the plaintiff and her son William, and it cannot be necessary to advert to all the details of that painful discrepancy. It will be enough to say in general terms, that, as it impresses us, most, or at least several, of the facts and circumstances of the case tend to corroborate the testimony of William, that his mother at least knew of the proceeding in the Probate Court and allowed it to proceed. Mother and son had recently lived together at Johnston, in Edgefield, and had talked over the matter of the dower. She says that William there asked her for permission to have the action brought for her, which she refused. The correspondence with the defendant was opened by her, saying in her last letter of May 17, 1880: "I thought you would be anxious for the matter to be settled. It is certainly my right that it should be, and my circumstances demand it. * * * I claim all that the law allows me. * * * It is the only means I have to look to; * * * my circumstances require an immediate settlement," &c.

There seems to have been no answer, and at this stage her son William, who had then removed to Allendale, Barnwell County, took up the business and wrote to Mr. Gary, employing him to

institute suit "for his mother." Nothing more was heard from Mrs. Latimer pending the suit or until April, 1881 (after the suit was ended and a silence for nearly a year), when she renewed the correspondence with the defendant about her dower. Considering her pressing needs, as declared by herself, it is difficult to understand this long silence, except upon the supposition that she knew of the proceedings and was waiting the event in silence, until she heard that her son, who was conducting the litigation for her, had appropriated the whole proceeds of the action.

This view is entirely consistent with the remarkable chasm in the correspondence, and explains what otherwise would have been on the part of the son an unparalleled act not only of audacity but of folly. Indeed, it was urged that the testimony of William was discredited by his letters, showing conscious guilt and apprehensions of arrest and disgrace. But upon a careful reading of his letters it will be found that his cries for mercy were all for taking and appropriating the contents of his mother's letter. Neither in his letter nor in his testimony does he any where intimate that he was not authorized to have the action brought for his mother or express apprehensions of danger or disgrace for anything except the appropriation of the money enclosed in the letter to his mother.

The judgment of this court is that the judgment of the Circuit Court be affirmed.