# IN THE MATTER OF THE APPLICATION OF P. F. HURLEY, ET AL., FOR A WRIT OF QUO WARRANTO AGAINST ERIC A. KNUDSEN.

## No. 1839.

ARGUED FEBRUARY 12, 1929.          DECIDED MARCH 16, 1929.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PARSONS, J.

This is a proceeding in *quo warranto* to require the repondent to show by what authority he claims and occupies the office of supervisor of the County of Kauai for the district of Waimea. The petitioners, among whom are two unsuccessful candidates for the position now held by respondent, aver among other things that the respondent was not a resident of Waimea either on the 8th day of October, 1927, when he was nominated as a Republican candidate for said position at the primary election then and there held, or on the 15th day of November, 1927, at the general election of said district when he was elected to said office, and that "he has not since said days been and is not now a resident of said district, but is and has for the past seven years been a resident of the district of Koloa, County of Kauai, where he maintains a permanent home for himself and family, conducts his business and pays his poll, road, school, income and property taxes."

The writ was duly issued as prayed and respondent filed his answer and return to the petition and writ, to which answer and return replication was made by the petitioners. At the hearing petitioners in open court admitted the qualifications of the respondent in every respect except that of residence. After the hearing the trial judge filed his written decision in which is set forth among other things the following statement: "From the evidence adduced I find the following facts: (1) Eric A.

Knudsen was not a bona fide resident of the district of Waimea either on the 8th day of October, 1927, or on the 15th day of November, 1927; (2) Eric A. Knudsen has not since said 8th day of October, 1927, or the 15th day of November, 1927, been and is not now a bona fide resident of said district of Waimea, but on the contrary has" (sic) "and is actually residing in the district of Koloa, County of Kauai; (3) Said Eric A. Knudsen usurps and intrudes into, and is unlawfully holding and exercising, the office of supervisor of the County of Kauai from the district of Waimea.".

Judgment was thereupon entered that the respondent "Eric A. Knudsen is not qualified to fill the said office of which he performs the duties; that said Eric A. Knudsen be and he hereby is ousted from said office and forbidden to any longer perform its duties; that the office of supervisor of the County of Kauai for and from the Waimea district is vacant; and the County of Kauai is directed to fill the vacancy in accordance with the provisions of Sec. 1640 of the Revised Laws of Hawaii of 1925 by action of its remaining supervisors; and that the petitioners recover of the respondent their costs."

The case is now before us upon respondent's appeal from the foregoing judgment. Evidence was admitted at the hearing which may be briefly summarized as follows: respondent, a son of the late Valdemar Knudsen and Annie S. Knudsen, was born July 29, 1872, at Waimea, two miles west of Kekaha in the district of Waimea, Island of Kauai. Waiawa was the home of respondent's parents. His father lived there until the latter's death in 1898 and his mother continued to live there until January or February, 1922. During his minority respondent lived with his parents at Waiawa except for absences from Hawaii spent at school and college and in traveling, and he continued to live there

until July, 1906. In the fall of 1900, upon respondent's return to Hawaii, he registered and voted at Kekaha in said district of Waimea. Thereafter respondent was elected to the territorial house of representatives, 1903 session, from the Island of Kauai and became vice-speaker of that body. He was returned to the house of representatives for the 1905 session and then became its speaker. In 1906 he was elected to the territorial senate from Kauai for a four-year term, at the expiration of which he was reelected to the same office and was president of the senate at its 1911 and 1913 sessions. During all of those years respondent was registered and voted in the same precinct in the Waimea district. In 1905 respondent was married and the following year built a home for himself and wife at Hoea in the Waimea district not far from Waiawa upon government land formerly leased to his father, which respondent continued to occupy and improve until 1923. Three of his four children were born there. In 1921 the lease to Hoea expired. Respondent had attempted to obtain a renewal of the same and later to obtain the place in exchange for other land and had failed in both instances. He then, under date of November 8, 1921, filed an application for preference right to purchase Hoea and on May 13, 1924, his claim was officially denied.

In 1923 respondent moved from Hoea to Halemanu, a country home of his upon government property at an elevation of about 2500 feet, about fourteen miles up the Waimea valley from the government road, in the Waimea district. Halemanu was occupied under a camping permit granted to the respondent for a period of ten years from and after June 1, 1919. The house was large, commodious and well furnished and was occupied by respondent and his family and frequently by their guests on week-ends and during school vacations. For

convenience, however, respondent in the year 1919 and thereafter spent much of his time at Koloa where he and his brother Augustus Knudsen, in partnership, had extensive business interests which were managed by the respondent. For this purpose the respondent and his family occupied a house owned by the two partners in Koloa Gap in the district of Koloa where he transacted much of the partnership business and from which he used to take his children to school at Lihue. Part of his time and theirs was spent with his mother (then over eighty years of age) at the latter's Koloa beach home. During much of this time respondent used to visit the Waimea district on business two or three times a week, sleeping on frequent occasions at Hoea or Halemanu. Respondent's business interests in the Waimea district included a cattle ranch, thirty acres of cane land at Hanapepe, partly owned by himself, other lands under lease to the Waimea Sugar Company, a kuleana near Mana, 1200 bee hives from which he used to ship thirty or forty tons of honey and a quantity of wax every year, a large warehouse in Waimea and trucks and paraphernalia used in connection with the honey business. During this time respondent was a member, and part of the time president, of the Kekaha Precinct Club, trustee of the Waimea Foreign Church and president of the Waimea Hall Association. On a number of occasions respondent represented Kekaha as a delegate to conventions in Honolulu.

In June 1923 respondent transferred his registration as a voter from the Waimea district to that of Koloa, but on September 5 of that year, after consulting with his attorney, he re-transferred his registration to Kekaha and later filed his nomination papers for the position of supervisor from the district of Waimea and was nominated at the primary and on November 13, 1923, was

elected at the general election, taking office January 2, 1924, as such supervisor, to which office he was reelected in 1925 and 1927. During all this time respondent was a registered voter in the Waimea district, maintaining a home as above set forth at Halemanu and having a place of business at Koloa where he spent much of his time.

In contesting respondent's claim to a residence sufficient to satisfy the requirements of the statute in the district of Waimea at the time of the general election November 15, 1927, and from January 2, 1928, when respondent was inducted into the office of supervisor of the County of Kauai from the district of Waimea, until January 26, 1928, the date of the filing of said petition and the issuance of said writ of *quo warranto,* the petitioners relied upon respondent's registration above referred to in the district of Koloa in 1923, upon adverse inferences from the facts above summarized and upon other facts, the evidence of which may be briefly summarized as follows: in 1920 respondent purchased a fine home on Judd street in Honolulu, which, during the remainder of that year and for part of the year 1921, was occupied by his wife and four children, two of whom were then attending Punahou academy. At this time Hoea was partly dismantled of its furniture, part of which was brought to Honolulu and placed in the Judd street house. In this year respondent executed and acknowledged a deed, the opening paragraph of which referred to him as "of the City and County of Honolulu." In the same year his address, given by himself, appeared in the Harvard alumni directory as "Koloa, Kauai, Hawaii," and it was to this last named address that most of his mail was sent. Part of his taxes, including poll and income, were paid in Koloa. On June 14, 1922, a verified petition for letters of guardianship of the

property of respondent's four minor children was filed in the fifth circuit court, in which petition respondent (the petitioner therein) was referred to as "residing at Ililaau Plantation, Koloa, County of Kauai, Territory of Hawaii." In 1928, at a time when respondent claimed to be living at Halemanu, on the pay roll warrant voucher, approved by the board of supervisors, he was allowed mileage from Kekaha only, though Halemanu is several miles farther from the county seat than Kekaha.

In his written decision the trial judge found that at the time of the election in 1927 and thereafter the respondent resided in Koloa. Said he: "The respondent contended that when he came to Koloa to take charge of the sugar cane business of Knudsen Brothers as manager, he did not intend to make it his permanent place of residence, but designed to retain his domicile in the district of Waimea, residing at Halemanu. It seems to me the evidence conclusively shows that the said Eric A. Knudsen changed such intention, and became in fact and intention, domiciled in the district of Koloa which appears to be the center of his affairs. Under such circumstances, I cannot but regard his residence in said district of Koloa, at least as a place of fixed present domicile, notwithstanding he may have had a floating intention to return to Hoea at some future period. As to his residence at Halemanu, I find the testimony of the respondent and his witnesses not clear and convincing to establish a domicile there. In the absence of any avowed intention, and of acts which indicate a contrary intention, a long-continued residence is regarded as a controlling circumstance in determining the question of domicile. That the respondent is domiciled in the district of Koloa, where he maintains a home for himself and family, conducts his business, pays

his poll, road, school, income and property taxes, is sufficiently borne out by the evidence as evincing an intention of permanent residence."

As has been frequently held, a finding of fact made by a circuit judge upon conflicting testimony is entitled to great weight in this court. See *Lymer* v. *Kumalae,* 29 Haw. 392. It will be noted, however, that in the case at bar there is little conflict in the testimony as to probative facts—the conflict lying chiefly in the ultimate facts deducible therefrom and in the conclusions of law to be based thereon. In appeal upon *quo warranto* it has been held that we have the power and that it is our duty, if the evidence requires it, to reach a different conclusion from that reached by the trial judge. See *Lymer* v. *Kumalae,* 29 Haw. 392, 400. In the case at bar the evidence requires such different conclusion. Respondent's testimony explains the business, official, educational and recreational reasons for his sojourns at Koloa Gap and Koloa beach, explains the convenience of receiving his mail there and explains the recital of Koloa and Honolulu addresses in instruments signed by him. But even in the absence of such explanations the incidents named are insufficient in themselves to overcome his direct and uncontradicted statement of facts showing a legal residence for voting and election purposes in the district of Waimea. There is no "absence of any avowed intention" or of "acts which indicate a contrary intention," as premised by the circuit judge in the above quoted part of his decision. With respect to Hoea, respondent testified that in 1923 and prior thereto he always considered his absence from that place as merely temporary absence and that whenever he left Hoea it was always his intention to return to his home at Hoea. With respect to Halemanu, which he testified was his home after 1923, he said that on all

occasions when he may have been absent therefrom after that date such absences were always with the intention of returning to that home and all such absences were merely of a temporary nature. He further said that he never left Halemanu with the idea of giving up that place as his residence. With reference to the Koloa beach house, he testified that he sometimes spent a little time there but when he was at the beach house it was not with the intention of staying there permanently; that it had never been with the intention of making that his permanent home and that he always had the intention of returning to his home at Halemanu at the end of his stay at the beach. As to the Gap house in Koloa, he said it was true that he had sometimes staid there for business reasons, but that he had never staid at the Gap house with the intention of making it his permanent home. Futhermore, that the Gap house was originally built for his luna, Blackstad, and was never intended for respondent or for any member of his family; that it was merely the business office of Knudsen Brothers and that at times when respondent staid at the Gap house it was always with the intention of returning to his home in the district of Waimea after he had finished his stay at the Gap house on account of business reasons. Contemporary declarations to this effect were made by respondent to his brother Augustus F. Knudsen. With reference to the Judd street home in Honolulu, respondent testified that he bought it as a place for his children to live in while going to school at Punahou; that his wife and children had gone to town and respondent was renting a place and then found this property on the market at a bargain and so bought it to save paying rent. He said that he figured that when the family would leave Honolulu again he could sell it at a profit; that he considered it merely a temporary arrangement

and never intended to make the Honolulu house his permanent home, and never intended to make Honolulu his permanent home.

The general qualifications of county officers are set forth in section 1611, R. L. 1925, which provides in part as follows: "Any person shall be eligible to fill any elective office created by the provisions of this chapter who shall be a citizen of the United States of America and of the Territory of Hawaii and who shall have been a duly qualified elector of said Territory and of the county in which he shall be elected for at least one year next prior to his election, and in case of the members of the board of supervisors, the same qualifications, except as otherwise provided by law, shall be required and, in addition thereto, except when elected at large, they shall continue to reside within the district from which they were elected during the period of their incumbency."

Section 1586, R. L. 1925, refers specifically to Kauai supervisors and provides as follows: "The board of supervisors of the County of Kauai shall consist of one member from each district. Every supervisor shall be a person residing in the district or districts for which he is candidate and shall be elected by the duly qualified electors of such district or districts."

The uncontradicted facts in the case are sufficient to show that the respondent on October 8, 1927, and at all times subsequent thereto, was "a person residing in the district or districts for which he is a candidate" and that he has continued to reside within the district from which he was elected during the period of his incumbency within the purview of the two statutes last above quoted. This is shown by the fact that he has for that period maintained at Halemanu, in the district of Waimea, a permanent and fixed abode with the accompanying intention there to remain. See *Hapai* v. *Pratt*, 19 Haw. 1.

The acts which corroborate respondent's express declaration of intention in this regard are his registration as a voter in the Waimea district, his exercise of the elective franchise exclusively therein, his candidacy for office requiring such residence, his incumbency thereof (also requiring such residence) for three successive terms, his membership in local organizations and his retention of extensive business interests in said district requiring his presence there two or three days in the week. A residence so maintained is not lost by a temporary absence of the party claiming it or of members of his family in the pursuit of business, pleasure or education nor by the maintenance of a temporary home elsewhere. Quoting from *Hairston* v. *Hairston,* 27 Miss. 704, 61 Am. Dec. 530, 533: "As a domicile may be acquired by a longer or shorter residence, depending upon the circumstances of the case, its true basis and foundation must be the intention, the *quo animo,* of residence. The apparent or avowed intention of residence, not the manner of it, constitutes domicile: *Bradley* v. *Lowry,* 1 Spears Eq. 2. In the absence of any avowed intention, and of acts which indicate a contrary intention, a long-continued residence is regarded as a controlling circumstance in determining the question of domicile. In most cases it is unavoidably conclusive: *The Ship Ann Green,* 1 Gall. 274; *The Harmony,* Id. 123. In the matter of *Catherine Roberts' Will,* 8 Paige, 446, it was said: 'The declarations of the party himself, where he can have no object or inducement to falsify the truth or to deceive those to whom such declarations are made, are the best evidence of his intention to make his actual residence his permanent residence also.' But where acts, although unaccompanied by declarations, concur with long-continued residence or habitancy, evincing an intention of permanent residence, it is manifest that they furnish as satisfactory evidence of that intention

as the express declarations of the party to that effect. So it is laid down by Judge Story, that even where a party has two residences at different seasons of the year, 'that will be esteemed his domicile which he himself selects, or describes, or deems to be his home, or which appears to be the center of his affairs, or where he votes or exercises the rights and duties of a citizen:' Confl. Laws, p. 45, sec. 47; *Shelton* v. *Tiffin*, 6 How. 163." See also *McHenry* v. *State*, 80 So. (Miss.) 763, where a residence sufficient to satisfy the requirements of a domicile such as that described in *Hairston* v. *Hairston* above quoted was also held sufficient to satisfy the requirement of a law making residence within a district a necessary qualification for the office of supervisor for said district. The mere directing that mail be sent to a business address or the giving of a business address to the publishers of an alumni directory or the insertion of an address other than the one claimed as a legal residence, in such directory, in a deed, or in a petition for guardianship, or the acceptance of mileage computed from another locality cannot, singly or in conjunction, without the proper accompanying intent, result in a loss of legal residence or in the shifting of legal residence from one home to another.

On the whole evidence appellant was entitled to judgment. The judgment of ouster is accordingly reversed.

*L. A. Dickey* (also on the brief) for petitioners.

*P. L. Rice* (*Rice & Clibborn* and *P. L. Rice* on the briefs) for respondent.